Reliable Janitorial Service, Inc., Reliable Carpet Cleaning, Inc., and Sentry Mutual Insurance Company ("Sentry") filed an action against AmSouth Bank, N.A. ("AmSouth"). The two "Reliable" corporations (which shall sometimes be referred to together as "Reliable") alleged that AmSouth converted checks made payable to the corporations and that AmSouth negligently or willfully and wantonly diverted the funds from checks made payable to the corporations to some other entity, not Reliable; Sentry claimed that it would be subrogated to a recovery by Reliable. The trial court entered summary judgment for the plaintiffs on the conversion claims and made the judgment final pursuant to Rule 54(b), A.R.Civ.P.
Reliable Janitorial Service, Inc., and its subsidiary, Reliable Carpet Cleaning, Inc., have a bank account with AmSouth; the claims of those two plaintiffs are identical. Reliable has about 150 employees, most of whom work providing janitorial services; Reliable also employed at the time of the transactions involved in this lawsuit a bookkeeper/office manager named Rosa Pennington. Pennington was the only full-time employee in Reliable's office, and Pennington managed many day-to-day financial matters for Reliable. Pennington deposited checks made payable to Reliable, but did not have authority to write checks on Reliable's account. AmSouth sent monthly statements to Reliable showing deposits to and withdrawals from Reliable's account. Reliable and AmSouth dispute how active a role Reliable's president had in managing Reliable's financial affairs.
Beginning in January 1985, Pennington obtained counter deposit slips from AmSouth. She wrote on the deposit slips that the depositor was "Reliable Janitorial Service, Inc.," or "Reliable Carpet Cleaning, Inc.," but, in the space for the account number, Pennington wrote the account number for her own personal account with AmSouth. She stamped checks, which were made payable to "Reliable Janitorial Service, Inc.," or "Reliable Carpet Cleaning, Inc.," with the indorsement "For Deposit Only, Reliable Janitorial Service, Inc.," or "For Deposit Only, Reliable Carpet Cleaning, Inc." Reliable alleges that over an 11-month period Pennington used 80 of the counter deposit slips described above to deposit 169 checks so indorsed; Reliable further alleges that AmSouth credited the deposits to Pennington, not Reliable. Pennington, since then, has spent all the funds that she diverted to her account.
Reliable filed this action against AmSouth, alleging conversion as well as negligent or willful and wanton conduct in depositing the funds into Pennington's account. Reliable had an employee theft insurance policy with Sentry, and Sentry paid $25,000, the limit of its liability under the policy, to Reliable to reimburse Reliable for the funds Pennington diverted to her account. Sentry joined Reliable's suit, alleging it was a subrogee to the extent of its payment to Reliable. AmSouth asserted both the common law defense of account stated and the defense found in Ala. Code 1975, §7-3-406. The trial court rejected both of these defenses, and, after fairly extensive discovery, the trial court granted Reliable's motion for summary judgment on the conversion claims. The trial court entered final judgment for Reliable Janitorial Service, Inc., for $43,271.57, for Reliable Carpet Cleaning, Inc., for $1,444.42, and for Sentry for $26,925.59.
AmSouth's first issue is whether the trial court erred by granting summary judgment on Reliable's conversion claim. To examine this issue, we look to the statutes concerning restrictive indorsements and those concerning conversion. There is no dispute that Pennington stamped the checks whose funds she misdirected with the indorsement "For Deposit Only, Reliable Janitorial Service, Inc.," or "For Deposit Only, Reliable Carpet Cleaning, Inc." Sections 7-3-205 and 7-3-206, Ala. Code 1975, address such indorsements. Section 7-3-205
provides: *Page 1367 
"§ 7-3-205. Restrictive indorsements.
"An indorsement is restrictive which either:
"(a) Is conditional; or
 "(b) Purports to prohibit further transfer of the instrument; or
 "(c) Includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection; or
 "(d) Otherwise states that it is for the benefit or use of the indorser or of another person."
Undeniably, the indorsements Pennington stamped on the checks were restrictive indorsements within the meaning of §7-3-205(c).
Section 7-3-206 addresses the effect of such an indorsement, and, pertinently, that section provides:
 "(3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms (subparagraphs (a) and (c) of section 7-3-205) must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement. . . ." (Emphasis added.)
Thus, under the exact words of the statute, AmSouthmust apply the value of Reliable's checks consistently with the indorsement, i.e., for deposit to Reliable's account.
Construing Ala. Code 1975, § 7-3-419, the trial court found AmSouth liable for conversion as a matter of law. The pertinent portions of § 7-3-419 provide:
"(1) An instrument is converted when:
". . . .
 "(b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it. . . .
". . . .
 "(4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (sections 7-3-205 and 7-3-206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor." (Emphasis added.)
The trial court entered summary judgment for Reliable on its conversion claim based on § 7-3-419(1)(b). That section addresses conversion by "Any person to whom [an instrument] is delivered for payment"; in this situation, AmSouth was a depositary bank, not a drawee/payor bank, which § 7-3-419(1)(b) addresses.[1] Section 7-3-419(1)(b) thus does not address this fact situation, where AmSouth, for the purposes of this lawsuit, served solely as a depositary bank. Accordingly, the trial court should not have based the summary judgment for Reliable on § 7-3-419(1)(b).
Nevertheless, § 7-3-419(4) applies in this fact situation. That section provides that intermediary or payor banks that arenot depositary banks are not liable in coversion "solely by reason of the fact that proceeds of an item indorsed restrictively (§§ 7-3-205 and 7-3-206) are not paid or applied consistently with the restrictive indorsement." The inference from that section is that banks that are depositary banks may
be liable in conversion[2] "solely by reason of the fact that proceeds of an item indorsed restrictively (Section 7-3-205 and Section 7-3-206) are not paid or applied consistently with the restrictive indorsement." *Page 1368 
This conclusion, that AmSouth may be liable in conversion, enforces the mandate from 7-3-205 and 7-3-206 that AmSouth must apply the value of Reliable's checks consistently with the indorsement. Accordingly, the conclusion is consistent with the general statutory scheme of Title 7, Article 3. For the foregoing reasons, the first issue presents no basis for reversal.
AmSouth also argues that the trial court erred by failing to allow AmSouth to assert the common law defense of account stated. The trial court held that Ala. Code 1975, § 7-4-406(1), embodies the full extent of the doctrine of account stated regarding bank deposits and collections. That section provides:
 "§ 7-4-406. Customer's duty to discover and report unauthorized signature or alteration.
 "(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof."
Ruling on this section, the trial court wrote:
 "The Bank also argues that the Plaintiffs are estopped or foreclosed by the common law doctrine of account stated. The Court holds, however, that Code Section 7-4-406 embodies the full extent of the doctrine of account stated regarding bank deposits and collections. This Code section restricts the doctrine to 'statement[s] of account accompanied by items paid in good faith in support of the debit entries' and requires the customer 'to examine the statement and items to discover his unauthorized signature or any alteration on an item.' "
(Emphasis added.) Based on this interpretation of the statute, the trial court held that AmSouth was not entitled to a defense of account stated.
The Court of Civil Appeals properly described the purpose of § 7-4-406 in East Gadsden Bank v. First City National Bank,50 Ala. App. 576, 581, 281 So.2d 431 (1973). There, the court wrote:
 "The purpose of the section is clearly to define the responsibility of a customer to its drawee bank
in respect to examining its statement of account from the bank and promptly discovering and reporting any item which may contain an instrument altered after being written and delivered, or which has been paid upon the forged signature of the customer."
(Emphasis added.) As East Gadsden Bank states, § 7-4-406
addresses the relationship between a drawer and a payor/drawee bank. Section 7-4-406 governs a customer's duty to discover unauthorized signatures or alterations on items drawn on his account. Subsection (2) states the consequences if a customer "failed with respect to an item to comply with the duties imposed on the customer by subsection (1)" (emphasis added). This section refers repeatedly to items paid by the bank. Accordingly, § 7-4-406 does not, by its terms, apply to a depositary bank, which AmSouth is in these transactions, or to deposits that are never credited to the account. The trial court's holding that § 7-4-406 embodies the full extent of the common law defense of account stated is, therefore, not strictly correct.
Nevertheless, this error by the trial court does not necessarily mean that AmSouth is entitled to the defense. AmSouth argues that the account stated defense is applicable because of Ala. Code 1975, § 7-1-103. That section provides:
 "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating *Page 1369 
or invalidating cause, shall supplement its provisions."
Accordingly, we must decide whether account stated is an appropriate common law defense, which we should accept through the statutory permission of § 7-1-103, to Reliable's conversion action against AmSouth.
The common law defense of account stated was accepted inMcCarty v. First National Bank of Birmingham, 204 Ala. 424,85 So. 754 (1920). The defense, were we to permit it in this situation, would require AmSouth to prove that had Reliable checked its bank statements in a reasonable time after AmSouth delivered the bank statements, Reliable should have recognized that its account, as reflected by the bank statements, contained less money than it should have. Boaz Bank v. Nailer,213 Ala. 314, 104 So. 793 (1925). Reliable must have accepted the bank statement "with knowledge of its purport" and must have "acquiesced in its correctness." McCarty, 204 Ala. at 427,85 So. at 757. If the jury accepts this defense, then AmSouth's statement of the account is considered to be a proper and true statement of the amount of money due to be in the account at the time the statement reflects. McCarty, supra; Boaz Bank,supra. Considering that the transactions that serve as the basis for this lawsuit occurred over an 11-month period, presumably the jury could find that the defense applies to only some of the bank statements, but not to others.
Reliable argues that the holdings in Rudisill Soil Pipe Co.v. First National Bank of Anniston, 224 Ala. 436, 140 So. 569
(1932), mandate that the defense of account stated would not apply in this case. Because the defense of account stated was not raised in Rudisill, that case is distinguishable.
While many cases where the defense of account stated has been used involve forgeries and, thus, are not precisely similar factually to the present case, the defense is appropriate, because it allows the jury to determine whether during this transaction there was fault in Reliable's conduct that reduces or eliminates AmSouth's liability for conversion. Accordingly, we hold that the trial court erred when it refused to allow AmSouth to use the account stated defense.
AmSouth's third issue concerns another defense the trial court disallowed, Ala. Code 1975, § 7-3-406. That section provides:
 "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."
AmSouth contends that, under § 7-3-406, the jury could find that Reliable was negligent, then find that Reliable's negligence "substantially contribute[d] to a material alteration of the instrument." However, § 7-3-406 by its terms requires that the material alteration must be to an instrument. Section § 7-3-102(1)(e) provides that " 'Instrument' means a negotiable instrument." In the present case, if there were material alterations, the "material alterations" would have been to deposit slips, not to the instruments themselves. Accordingly, AmSouth may not use § 7-3-406 as a defense.[3] Cf. AlSarena Mines, Inc. v. SouthTrust Bank of Mobile, Inc.,548 So.2d 1356 (Ala. 1989).
AmSouth's final issue is whether the trial court erred in determining as a matter of law that Pennington was not Reliable's agent. We do not necessarily accept AmSouth's premise that such a determination of agency is implied in the judgment. To the extent that the agency issue is material *Page 1370 
and relevant, the account stated defense will present the issues that AmSouth claims are involved in its various arguments about agency. AmSouth's arguments concerning agency seek to establish that Pennington's acts and knowledge can be imputed to Reliable, if Pennington is found to be Reliable's agent. We question the validity of this argument, because the cases on which AmSouth relies address a fact situation different from the present case. AmSouth's cases address a more frequently occurring fact situation, where an injured third party attempts to place liability on a principal for the alleged agent's wrongful acts by imputing the agent's act or knowledge to the principal. In that fact situation, decisional law sometimes imputes the acts or knowledge of the agent to the principal. However, in the present situation, AmSouth would have us hold the principal responsible for the acts of its agent, even though the principal itself, not a third party, is the injured party. Thus, far from presenting a question of whether a principal is liable to a third party for the acts of an agent, this case presents a question of whether a third party is liable for its wrongdoing, concurrent with the wrongdoing of the agent, which injured the principal. Although some defenses may arise from the agency relationship, the principal defense is the account stated defense, so we do not address the question of whether the trial court's summary judgment for Reliable was erroneous under the agency arguments made by AmSouth.
Because the account stated defense presents a genuine question of material fact and precludes judgment as a matter of law for Reliable, the trial court erred in entering summary judgment. Therefore, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur.
[1] Section 7-3-102(3), Ala. Code 1975, states that the definitions of "payor bank" and "depositary bank" to be used in relation to Article 3 are the definitions stated in Ala. Code 1975, §7-4-105. Section 7-4-105 provides:
"In this article unless the context otherwise requires:
 "(a) 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank;
 "(b) 'Payor bank' means a bank by which an item is payable as drawn or accepted." "Payment" of a check is made only by the drawee/payor bank on which the check is drawn. Strickland v. Kafko Mfg. Inc., 512 So.2d 714, 716 (Ala. 1987).
[2] Even if none of the specific conversion actions of §7-3-419(1) will lie, a common-law conversion action may lie. Ala. Code 1975, § 7-1-103; Al Sarena Mines, Inc. v. SouthTrustBank, 548 So.2d 1356 (Ala. 1989); Strickland v. Kafko Mfg.,Inc., 512 So.2d 714 (Ala. 1987).
[3] Considering all the evidence the trial court had before it, we find no error in the trial court's holding that neither of the stamped indorsements, "For Deposit Only, Reliable Janitorial Service, Inc.," or "For Deposit Only, Reliable Carpet Cleaning, Inc.," was an "unauthorized signature" within the meaning of "unauthorized signature" in § 7-3-406.