SOCIETY NATIONAL BANK, APPELLEE, *v.* SECURITY FEDERAL SAVINGS AND LOAN, APPELLANT.

[Cite as *Society Natl. Bank v. Security Fed. S. & L.* (1994), 71 Ohio St.3d 321.]

(No. 93–1878—Submitted November 15, 1994—Decided December 23, 1994.)

322

*Howard E. Coburn* and *Richard G. Zeiger*, for appellee.

*Dworken & Bernstein Co., L.P.A., Patrick J. Perotti* and *David J. Richards*, for appellant.

---

A. WILLIAM SWEENEY, J. We decide this case pursuant to R.C. Chapters 1303 and 1304, which codify Articles 3 and 4 of the Uniform Commercial Code ("UCC") and authorize the payee of a check to employ indorsements to restrict the way in

which a check drawn to his order will be paid. Specifically, former R.C. 1303.27 (former UCC 3–206) provided:

"(C) Except for an intermediary bank, any transferee under an indorsement which * * * includes the words * * * 'for deposit,' * * * must pay or apply any value given by him for * * * the instrument consistently with the indorsement * * *."

We today hold that, pursuant to this statute, a depositary bank [2] (here, Security Federal) presented with a check bearing a blank restrictive "for deposit only" indorsement made by or on behalf of the payee acts inconsistently with the indorsement in cashing or crediting the amount of the check to any account other than one held in the name of the payee. This holding is consistent with precedent established by other courts and with the conclusions expressed in legal treatises. See *Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co. of Md.* (D.Md.1987), 658 F.Supp. 140, 143 (citing White & Summers, Uniform Commercial Code [2 Ed.1980] 596); *AmSouth Bank, N.A. v. Reliable Janitorial Serv., Inc.* (Ala.1989), 548 So.2d 1365, 1367; cf. *O'Petro Energy Corp. v. Canadian State Bank* (Okla.1992), 837 P.2d 1391. See, also, *Underpinning & Found. Constructors, Inc. v. Chase Manhattan Bank, N.A.* (1979), 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319. Accord 4 Hawkland & Lawrence, UCC Series (1994), Section 3–205:05 (Art. 3), at 366 ("When an instrument is indorsed 'for deposit,' the holder has signified that the proceeds obtained from payment of the instrument can only be used to credit a bank account. Taken literally, this would permit the proceeds to be credited to any bank account, although the clear purpose of the indorsement is to limit the application of the proceeds to deposit in the holder's bank account"); 2 Hart & Willier, Bender's Uniform Commercial Code Service, Commercial Paper under the Uniform Commercial Code (1994), Section 3A.02, at 3A–5 (" * * * [W]hen an instrument is indorsed 'For Deposit,' the indorsee, almost always a bank, is obligated to put any money received for the instrument in the indorser's account."); 1 Lawrence, Commercial Paper and Payment Systems (1990), Section 3.6[3], at 3–37 ("A payee who indorses a check 'for deposit only' provides notice to the depository [*sic* ] bank that the check is to be credited to the payee's account. * * * [T]he bank cannot credit the check to any account other than the payee's or apply the check to an outstanding indebtedness.").

Pursuant to Am.Sub.S.B. No. 147, former R.C. 1303.27 was replaced by a revised version of R.C. 1303.26. Our holding today is consistent with the express terms of newly enacted R.C. 1303.26 (1990 UCC 3–206[c] ), which provides:

---

2. A "depositary bank" is the first bank to which a check is transferred for collection. Former R.C. 1304.01 (UCC 4–105).

"(C) If an instrument bears an indorsement * * * using the words * * * 'for deposit,' * * * or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply:

" * * *

"(2) A depositary bank that purchases the instrument or takes it for collection when so indorsed *converts the instrument* unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement." (Emphasis added.)

This revision does not change prior law, but merely constitutes an attempt to clarify and continue the existing UCC law of restrictive indorsements. See Official Comments 1 and 3 to the 1990 draft proposals.[3]

In addition to former R.C. 1303.27, former R.C. 1303.55 (former UCC 3–419) provided, in part:

"(C) Subject to the provisions of sections 1303.26, 1303.55, 1303.69, and 1304.11 of the Revised Code, concerning restrictive indorsements, a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

"(D) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively, pursuant to sections 1303.26 and 1303.27 of the Revised Code, are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor."

This statute constitutes additional authority for holding that, in the absence of a valid defense, a depositary bank which has paid a check inconsistently with a restrictive endorsement is liable to the payee in conversion. See *AmSouth Bank, N.A. v. Reliable Janitorial Serv., Inc., supra,* 548 So.2d at 1367 ("The inference from [Alabama's version of UCC–3–419] is that banks that *are* depositary banks *may* be liable in conversion 'solely by reason of the fact that proceeds of an item

---

3. Official Comment 3 provides the following example: "* * * [A] check is payable to X, who indorses in blank but writes above the signature the words 'For deposit only.' The check is stolen and is cashed at a grocery store by the thief. The grocery store indorses the check and deposits it in Depositary Bank. The account of the grocery store is credited and the check is forwarded to Payor Bank which pays the check. Under subsection (c), the grocery store *and Depositary Bank* are converters of the check *because X did not receive the proceeds of the check.*" (Emphasis added.) The case at bar is analogous to this example.

indorsed restrictively * * * are not paid or applied consistently with the restrictive indorsement.'"). (Emphasis *sic.*)

In the case at bar, the parties agree that when John Vedrody indorsed the check by affixing his signature under the words "For Deposit Only," he restrictively indorsed the check on behalf of Microtek, the named payee. Thereafter the check could only, consistent with the restrictive indorsement, be deposited into an account held by Microtek, the named payee. When Security Federal credited an account of a separate legal entity, NovelTree, it thereby converted the check by acting in express contravention of the restrictive indorsement.

Security Federal argues that it acted lawfully in accepting the check into the account of a separate legal incorporated entity (NovelTree) because the check was presented by Vedrody with a written deposit slip signed by Vedrody (an authorized agent of both the payee Microtek and NovelTree), directing deposit of the net proceeds of the check into that separate NovelTree account. Security's argument lacks merit. The issue is not whether Vedrody had legal authority to modify the indorsement he previously had made on behalf of Microtek. The issue is whether his act of preparing a deposit slip on behalf of NovelTree instructing payment of the check in a manner contrary to the indorsement he had previously made on behalf of Microtek was an act sufficient to accomplish a modification of that indorsement. We find no statutory authority for the proposition that a depositary bank may disregard a restrictive indorsement based on the content of a deposit slip which is facially inconsistent with that restrictive endorsement. On the contrary, the law compels the opposite conclusion. A deposit slip, which is neither attached to nor incorporated into the check itself, does not constitute an allonge, nor can a writing contained on a deposit slip serve as a restrictive indorsement, or a modification of a restrictive indorsement. See former R.C. 1303.23(B) ("An indorsement must be written by or on behalf of the holder *and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.*" [Emphasis added.]). See, also, *All Am. Fin. Co. v. Pugh Shows, Inc.* (1987), 30 Ohio St.3d 130, 132, 30 OBR 443, 445, 507 N.E.2d 1134, 1136, at fn. 3.

Security Federal further contends that Society, as Microtek's successor-in-interest, can assert no greater rights than could Microtek itself, and that Microtek would be estopped to assert payment of the check inconsistent with the restrictive indorsement. Security Federal argues that Society, as successor-in-interest to Microtek, is estopped from asserting Microtek's conversion claim because Vedrody achieved the very result he intended when Security Federal deposited the check's net proceeds into the NovelTree account and remitted $1,000 in cash to him. We reject this argument as we disagree with its underlying premise that Microtek itself would be estopped from asserting its claim in conversion. Cf. *Cairo Coop. Exchange v. First Natl. Bank of Cunning-*

*ham* (1980), 228 Kan. 613, 616, 620 P.2d 805, 808, modified and rehearing denied (1981), 229 Kan. 184, 624 P.2d 420 ("[D]efendant [a depositary bank] cannot assert the defense of estoppel where it failed to act with ordinary care."). In addition, Security Federal misconstrues the identity of the owner of the check in this case. The parties have stipulated that John Vedrody indorsed the Microtek check with his signature under the words "For Deposit Only" as president of Microtek. His action in presenting the check to Security Federal with a deposit slip directing a deposit into NovelTree's account was made on behalf of Novel-Tree, as is evident from the deposit slip itself, which specifies the depositor by name as NovelTree and includes the account numbers of an account held by that legal entity. To accept Security Federal's suggestion that Vedrody's act in preparing the NovelTree deposit slip was simultaneously an act made on behalf of Microtek would require us to merge the legal identity of two separate incorporated entities with the individual who serves as president, controlling shareholder, and authorized signator of both. Ohio law does not permit such a merger. The doctrine that a corporate legal entity is distinct from its individual shareholders should be disregarded only when justice cannot be served in any other way. *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 11, 24 OBR 5, 9, 492 N.E.2d 441, 446. We conclude in this case that equitable estoppel principles do not preclude Society from asserting Microtek's conversion claim.[4]

We are aware that Vedrody had the legal authority to convert the Microtek check into bearer paper by simply indorsing the check with his signature. Had Vedrody done so he might have simply cashed the check, thereby perhaps keeping its proceeds from the reach of Microtek's secured creditor, Society. We find this to be largely irrelevant, however, as is the fact that Vedrody might have deposited the $15,600 check into a Microtek account and promptly thereafter withdrawn all the funds in the account, leaving Society with no claim against the depositary bank. The question before us is not what Vedrody, as an authorized agent of both Microtek and NovelTree, *might* have done, but to determine the legal effect of what both Vedrody and Security Federal actually did. Vedrody restrictively indorsed the check on behalf of Microtek, and then presented it to Security Federal with a separate request made on behalf of NovelTree that the bank pay the check inconsistently with the Microtek indorsement. At the moment that Security Federal honored that latter request, it incurred liability in conversion to Microtek. We affirm the judgment of the court of appeals and find

---

4. We do not speculate as to whether this conclusion would obtain were successful prosecution of Microtek's claim likely to accrue to Vedrody's individual benefit. In such a case, a piercing of Microtek's corporate veil so as to preclude assertion of the conversion claim by Vedrody might well be justified.

that Society, as successor to Microtek's general intangibles (including choses in action), is entitled to judgment on its claim.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, JONES and F.E. SWEENEY, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent.

FRED E. JONES, J., of the Twelfth Appellate District, sitting for RESNICK, J.

WRIGHT, J., dissenting. I agree wholeheartedly with both paragraphs of the syllabus and the majority's determination that Security Federal applied the funds inconsistently with the restrictive indorsement in this case. However, unlike the majority, I would not hold Security Federal liable to Society in conversion, because the unique circumstances of this case provide Security Federal with a valid defense.

The majority correctly points out that John Vedrody had the authority to indorse checks and modify indorsements on behalf of Microtek. However, the majority fails to note the critical fact that the parties stipulate that Microtek had given Vedrody the unlimited authority to direct the application of its check proceeds. The majority does concede that Vedrody had the authority to cash the Microtek check or withdraw all the funds from the Microtek account after depositing the check proceeds into Microtek's account.

By stating that Vedrody was acting only on behalf of NovelTree when he directed Security Federal to return cash and to deposit the remaining check proceeds into the NovelTree account, the majority is, in essence, saying that Vedrody was some thief who was stealing the proceeds from Microtek. Obviously, this cannot be so, because Microtek had given Vedrody the authority to deposit the funds into the NovelTree account. It is clear that the teller at Security Federal followed Vedrody's instructions regarding the application of the Microtek check not because Vedrody was an authorized agent of NovelTree, but because he was an authorized agent of Microtek. In point of fact, the parties stipulate that the Security Federal teller personally knew Vedrody and knew that Microtek had given Vedrody the unlimited authority to direct the application of the proceeds of the Microtek check.

As is evident from the second paragraph of the syllabus, a depositary bank is not automatically liable in conversion for applying funds inconsistently with a restrictive indorsement. A depositary bank is liable only if it has no valid defense. R.C. 1301.03 provides: "Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., 1309., and 1310. of the Revised Code, the principles of law and equity, including * * * the law relative to * * * principal and agent, estoppel, * * * or other validating or

invalidating cause shall supplement their provisions." Thus, the common-law principles relating to estoppel, waiver, and agency supplement the statutory provisions concerning restrictive indorsements. If the defenses of waiver and estoppel were not available, I could place a "for deposit only" restrictive indorsement upon a check payable to me, take the check to my bank, instruct the teller that I have changed my mind and want cash, and then sue the bank in conversion if it gives me the cash instead of depositing the check proceeds into one of my accounts.

Microtek, through the words and actions of its general agent who was authorized to direct the application of check proceeds, waived the right to have the check proceeds deposited into one of its own accounts. A waiver is generally defined as a "voluntary relinquishment of a known right." *State ex rel. Hess v. Akron* (1937), 132 Ohio St. 305, 307, 8 O.O. 76, 77, 7 N.E.2d 411, 413. See, also, *Michigan Auto. Ins. Co. v. Van Buskirk* (1927), 115 Ohio St. 598, 155 N.E. 186, paragraph one of the syllabus. A person may waive rights and privileges secured by contract, conferred by statute, or guaranteed by the Constitution, provided the waiver does not violate public policy. See *Hess, supra,* 132 Ohio St. at 307, 8 O.O. at 77, 7 N.E.2d at 413. Furthermore, a duly authorized agent may waive the rights of his principal, with respect to matters within the scope of the agent's authority. See 28 American Jurisprudence 2d (1966) 837, Estoppel and Waiver, Section 155. The only means by which a corporation like Microtek can waive its contractual or statutory rights is through the actions of an authorized agent like Vedrody.

In this case, Vedrody exercised his express authority to direct the application of the check proceeds when he instructed Security Federal to return cash and to deposit the remaining proceeds from the Microtek check into the NovelTree account. By doing so, Vedrody voluntarily relinquished Microtek's right to have the check proceeds deposited into one of its own accounts in accordance with the restrictive indorsement.

Because Microtek, through its authorized agent, waived the right to have the check proceeds deposited into one of its accounts, it is precluded from asserting any claims against Security Federal based upon the latter's failure to apply the check proceeds consistently with the restrictive indorsement. Society, as Microtek's successor-in-interest, can assert no greater rights than Microtek. Therefore, Society cannot assert any claims against Security Federal for violating the restrictive indorsement on Microtek's check.

For the foregoing reasons, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.