**The STATE OF QATAR, et al., Plaintiffs,**

**v.**

**FIRST AMERICAN BANK OF VIRGINIA, d/b/a First Union National Bank of Virginia, et al., Defendants.**

**Civ. A. No. 1:94cv1081.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 3, 1995.

---

Dorothy B. Fountain, Richard L. Cys, Davis, Wright, Fremaine, Washington, DC, for plaintiffs.

Daniel S. Fiore, Arlington, VA, Grady C. Frank, Jr., Hazel & Thomas, P.C., Alexandria, VA, for First Union Nat. Bank of Virginia.

Robert K. Richardson, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Central Fidelity Banks, Inc.

## *MEMORANDUM OPINION*

ELLIS, District Judge.

At issue in this sequel to *State of Qatar v. First American Bank of Virginia* ("*Qatar I*")[1] is the meaning and legal significance of the phrase "for deposit only" following an indorsement on the back of a check. More specifically, the question presented is wheth-er a depositary bank complies with the restrictive indorsement "for deposit only" when it deposits a check bearing that restriction into *any* person's account, or whether that restriction requires a depositary bank to deposit the check's proceeds only into the account of the named payee. For the reasons that follow, the Court holds that the unqualified language "for deposit only" following an indorsement on the back of a check requires a depositary bank to place the check's proceeds into the payee's[2] account, and the bank violates that restrictive indorsement when it credits the check to any other account.

### I.

The facts underlying this case are more fully set forth in *Qatar I* and are only briefly reiterated here. Plaintiffs are the State of Qatar and certain of its agencies (collectively, "Qatar"). From approximately 1986 to 1992, one of Qatar's employees, Bassam Salous, defrauded his employer by having checks drawn on Qatar's account in purported payment of false or duplicate invoices that he had created. Although all of the unauthorized checks were made payable to individuals and entities other than Salous, he nonetheless successfully deposited the checks into his own personal accounts with Defendant First American Bank of Virginia ("First American") and Central Fidelity Banks, Inc. (collectively, "the depositary banks").[3]

After Qatar discovered this fraudulent scheme in 1992, it brought suit against the depositary banks for conversion. These banks succeeded on summary judgment in establishing that they were not liable as a matter of law with respect to two categories of checks in dispute,[4] and they prevailed on a

---

1. 880 F.Supp. 463 (E.D.Va.1995).

2. Throughout this Memorandum Opinion, "payee" is intended to refer to the last purported indorser.

3. Central Fidelity Banks, Inc. ("Central Fidelity") was also a defendant during the trial of this case. Since then, however, Qatar and Central Fidelity have settled the post-trial dispute concerning Central Fidelity's liability for depositing checks bearing a forged indorsement and the restriction "for deposit only" into Salous' per-sonal account. Therefore, only First American remains as a defendant in this stage of litigation.

4. The four categories of checks originally in dispute were:
   (1) checks bearing no indorsement at all;
   (2) checks bearing a forged indorsement only;
   (3) checks bearing a forged indorsement, followed by the words "for deposit only";
   (4) checks bearing a forged indorsement, followed by the words "for deposit only", followed by Salous' personal account number.

factual issue at trial that relieved them from liability for yet another category of checks.[5]

Only one category of checks remains in dispute. These checks all bear the forged indorsement of the payee named on the face of the check, followed by a stamped "for deposit only" restriction. In *Qatar I*, the Court denied the depositary banks' motion for summary judgment with respect to these checks on the ground that the depositary banks could be held liable for applying the proceeds of the checks in violation of the restrictive indorsements. *Qatar I*, 880 F.Supp. at 469, 470–71. Specifically, the Court stated:

> [W]hile the forged signature presented no barrier to payment given the effect of [U.C.C.] § 3–405, the accompanying restriction ("FOR DEPOSIT ONLY") provided a clear instruction to the depositary banks to deposit the funds only into the account of the last indorser—here, the named payee.

*Id.* The Court did not hold the depositary banks liable as a matter of law with respect to these checks, but decided to await the banks' presentation of defenses, if any, at trial.[6] At trial, the depositary banks raised no defenses, but instead challenged for the first time the Court's assumption in *Qatar I* that the phrase "for deposit only", without further specification, directs a depositary bank to deposit the funds only into the account of the named payee. An indorsement in this form, they argued, is far less restrictive, as it merely directs that the check's proceeds be *deposited* in an account, not that they be deposited into a particular account. Thus, the depositary banks urged, they fully complied with the restrictive indorsements on these checks when they deposited the proceeds into Salous' account. Although this issue properly should have been raised at the summary judgment stage, the Court permitted the parties to research the matter and submit post-trial legal memoranda regarding this final, narrow issue. Qatar and First American did so,[7] and the matter is now ripe for disposition.

## II.

■ It is now established that First American may be liable to Qatar for handling a check's proceeds in violation of a restrictive indorsement. *Qatar I*, 880 F.Supp. at 469, 470–71.[8] Under § 3–205(c) of the pre–1993 Uniform Commercial Code ("U.C.C." or

---

In *Qatar I*, the Court ruled that the depositary banks were not liable as a matter of law for the first two categories of checks. 880 F.Supp. at 468.

5. Although the parties stipulated that all of the checks bore forged indorsements and fell within the purview of U.C.C. § 3–405(1)(c), a factual issue still remained regarding a separate category of checks that bore Salous' personal account number following the words "for deposit only". Because the parties agreed that a restrictive indorsement in this form instructs the bank to deposit the funds only into the referenced account, the only factual issue presented was whether the checks appeared in this form when presented for deposit, or whether the account number was added thereafter. The case was submitted to the jury on this factual issue alone. At trial, the jury determined by way of special verdict that Qatar had not carried its burden of proving that the account number was added after or at the time that the checks were presented for deposit. Given this, the banks were not liable to Qatar, for by placing the funds in the specified account, they had appropriately complied fully with the restrictive indorsement on the check at the time of presentation for deposit.

6. Moreover, summary judgment in favor of Qatar would have been inappropriate at that stage, since the parties had not yet stipulated that Qatar had met the elements of § 3–405(1)(c), a prerequisite for the depositary banks' conversion of Qatar's funds. *See Qatar I*, 880 F.Supp. at 467–68. *See also infra* note 8.

7. As noted previously, Central Fidelity has since settled this issue with Qatar and is no longer a defendant in this action.

8. It is important to note for the reader unfamiliar with *Qatar I* that First American is liable in conversion to Qatar, the drawer, for violating restrictive indorsements only because the forged indorsements are "effective" pursuant to former § 3–405(1)(c). Were this not a § 3–405(1)(c) case, the forged indorsements would be ineffective to negotiate the instrument, and any money paid to the depositary banks on the forged checks would be deemed to come from the drawee bank's own funds, not from Qatar's account. *See Qatar I*, 880 F.Supp. at 467–68.

"Code"),[9] restrictive indorsements are defined to "include the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection." Thus, the U.C.C. makes clear that the phrase "for deposit only" is, in fact, a restrictive indorsement. But the Code does not define "for deposit only" or specify what bank conduct would be inconsistent with that restriction.[10] Nor does Virginia decisional law provide any guidance on this issue. As a result, reference to decisional law from other jurisdictions is appropriate.

Not surprisingly, most courts confronted with this issue have held that the restriction "for deposit only", without additional specification or directive, instructs depositary banks to deposit the funds only into the payee's account.[11] In addition, commentators on commercial law uniformly agree that the function of such a restriction is to ensure that the checks' proceeds be deposited into the payee's account.[12]

This construction of "for deposit only" is commercially sensible and is adopted here. The clear purpose of the restriction is to avoid the hazards of indorsing a check in blank.[13] Pursuant to former § 3–204(2), a check indorsed in blank "becomes payable to bearer." It is, essentially, cash. Thus, a

9. Article three of the U.C.C. governs the law of negotiable instruments and was substantially amended effective January 1, 1993. Because all of the relevant events surrounding this case occurred prior to 1993, the former U.C.C. provisions apply here. All U.C.C. citations are to Va.Code, Title 8.3, *amended by* Va.Code, Title 8.3A (Supp.1994).

10. The amended Code provision on restrictive indorsements provides more guidance on the meaning of "for deposit only." § 3A–206. Specifically, in describing particular types of restrictive indorsements, § 3A–206(c)(ii) refers to indorsements "using the words 'for deposit,' 'for collection,' *or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account."* (emphasis added).

11. *See, e.g., Society Nat'l Bank v. Security Fed. Sav. & Loan,* 71 Ohio St.3d 321, 643 N.E.2d 1090, 1091 (1994) (holding that "pursuant to [former U.C.C. § 3–206], a depositary bank ... presented with a check bearing a blank restrictive "for deposit only" indorsement made by or on behalf of the payee acts inconsistently with the indorsement in cashing or crediting the amount of the check to any account other than one held in the name of the payee") (citations omitted); *Mid–Atl. Tennis Cts. v. Citizens Bank & Trust Co.,* 658 F.Supp. 140, 143 (D.Md.1987) (depositing a check's proceeds into the payee's account is "the only treatment consistent with a 'for deposit only' restrictive endorsement made by, or (even purportedly) on behalf of, a named payee") (citations omitted). *See also Underpinning & Found. Constructors v. Chase Manhattan Bank,* 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319, 1320, (1979) (restrictive indorsement "for deposit only" "require[s] that the checks be deposited into the indorser's account"); *Spielman v. Manufacturers Hanover Trust Co.,* 60 N.Y.2d 221, 469 N.Y.S.2d 69, 456 N.E.2d 1192, 1194 (1983) (interpreting *Underpinning* in *dicta* ). *Cf. La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 563–64

(Tex.1984) (implying in holding that "for deposit only" restriction is violated when the check is not placed in the payee's account); *O'Petro Energy Corp. v. Canadian State Bank,* 837 P.2d 1391 (Okla.1992) (same).

12. *See, e.g.,* 1 William H. Lawrence, *Commercial Paper and Payment Systems* § 3.6[b][3], at 3–37 (1990) ("A payee who endorses a check 'for deposit only' provides notice to the depository [sic] bank that the check is to be credited to the payee's account.... The only way that a depository [sic] bank can apply value consistently with the endorsement is to credit the payee's account"); 4 William D. Hawkland & Lary Lawrence, *U.C.C. Series* § 3–206:05 (Art. 3), at 366 (1994) (rejecting proposition that "for deposit only" "would permit the proceeds to be credited to any account"); 2 Frederick M. Hart & William F. Willier, *Bender's Uniform Commercial Code Service, Commercial Paper under the Uniform Commercial Code* § 3A.02 (1994) ("When an instrument is indorsed 'For Deposit,' the indorsee, almost always a bank, is obligated to put any money received for the instrument in the indorser's account"); Julian B. McDonnell, *Bank Liability for Fraudulent Checks: the Clash of the Utilitarian and Paternalist Creeds under the Uniform Commercial Code,* 73 Geo.L.J. 1399, 1415 (1985) ("indorsers must deposit checks restrictively indorsed 'for deposit only' into the account of the indorser, rather than cash the check or deposit it into another's account"); James S. Rogers, *Negotiability as a System of Title Recognition,* 48 Ohio St.L.J. 197, 223 n. 94 (1987) ("the mechanism of restrictive indorsement 'for deposit only' enables a payee to [indorse a check in blank] without facing any of the risks that would otherwise flow from converting the instrument into bearer form"). *See also* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 13–10 (3d ed. 1994 Supp.).

13. A blank indorsement, as opposed to a special indorsement, is one that specifies no particular indorsee. § 3–204, *amended by* § 3A–205.

payee who indorses her check in blank runs the risk of having the check stolen and freely negotiated before the check reaches its intended destination. To protect against this vulnerability, the payee can add the restriction "for deposit only" to the indorsement, and the depositary bank is required to handle the check in a manner consistent with that restriction. § 3–206(3). And in so adding the restriction, the payee's intent plainly is to direct that the funds be deposited into her own account, not simply that the funds be deposited into some account.[14] *See* 1 William H. Lawrence, *Commercial Paper and Payment Systems* § 3.6[b][3] (1990). Any other construction of the phrase "for deposit only" is illogical and without commercial justification or utility. Indeed, it is virtually impossible to imagine a scenario in which a payee cared that her check be deposited, but was indifferent with respect to the particular account to which the funds would be credited.

First American opposes this result, contending that the unqualified restriction "for deposit only" merely requires a depositary bank to deposit the check into an account, irrespective of which one. In support of this proposition, First American cites only one case, *Western Assurance Co. v. Star Financial Bank of Indianapolis,* 3 F.3d 1129 (7th Cir.1993).[15] In *Western Assurance,* Western Assurance Co. ("Western") and Connors Consulting Group ("CCG") were working together on a contract and decided to open separate accounts at the same bank. Within each account, the companies maintained signature cards that entitled certain officers of either company to endorse checks and perform particular transactions with respect to that account. When their relationship deteriorated, Western sued the bank for permitting an officer of CCG to deposit into CCG's account checks made payable to Western and bearing the restriction "for deposit only."

The Seventh Circuit panel in *Western Assurance* held that the bank behaved in a commercially reasonable manner in depositing the checks into CCG's account because the signature cards vested the CCG official with apparent authority to negotiate the checks. *Id.* at 1131–33. Furthermore, and of particular significance here, the panel held that the bank did not violate the restrictive indorsement "for deposit only" in depositing the Western checks into CCG's account. *Id.* at 1133. In so holding, the Seventh Circuit panel noted that "[t]he endorsements ... did not by their terms require deposit into one of Western's accounts." *Id.* Rather, the panel determined, the "for deposit only" restriction simply "prevented anyone from negotiating the checks other than for deposit." *Id.* Similarly, First American argues, the "for deposit only" restrictions on the checks at issue here directed only that the funds be deposited, an instruction with which First American complied by placing the checks' proceeds into Salous' personal account.

Qatar seeks to distinguish *Western Assurance's* holding regarding the meaning of "for deposit only" based on the fact that the depositor in that case had apparent authority pursuant to the signature cards to deposit the checks into CCG's account. However inviting, this distinction is ultimately unpersuasive. While the factual context in *Western Assurance* is certainly distinguishable from the case at bar, the Seventh Circuit panel there did not tailor its holding concerning the legal effect of "for deposit only" to the narrow circumstances of that case. The *Western Assurance* panel held that the bank acted consistently with the "for deposit only" restrictive indorsement not because of the CCG officer's apparent authority, a separate issue in the case, but rather because the bank *deposited* the funds. *Id.* at 1133.

---

**14.** Of course, the payee can direct that the funds be delivered into someone else's account by including the particular account name or number in the restriction (e.g., "for deposit only into account of X" or "for deposit only into account # 123456").

**15.** To its credit, Qatar brought to the Court's attention another case, *Stewart Office Suppliers, Inc. v. Southern National Bank,* 328 N.C. 83, 399

S.E.2d 108 (1991) (reversing lower court's decision and adopting dissenting opinion in 97 N.C.App. 353, 388 S.E.2d 599 (1990)), that also appears to support First American's position. This case, however, has been discredited by at least two commentators. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 13–10 (3d ed. 1994 Supp.). And, for reasons further elaborated in this Memorandum Opinion, this decision is unpersuasive.

Thus, *Western Assurance* squarely supports First American's position here and must be confronted.

This stated, the portion of *Western Assurance* dealing with the legal significance of "for deposit only" is nonetheless unconvincing here. The *Western Assurance* panel cites no authority for its conclusion, nor does it support its ruling with any significant discussion or analysis. While it is true that the literal command of the bare words "for deposit only" is simply that the check be deposited, such rigid reliance on linguistics in disregard of practical considerations and plain common sense is both unwarranted and imprudent. This is especially so given that the individuals writing and relying upon these restrictive indorsements are not apt to be well versed in the subtleties of negotiable instruments law.[16] As evidenced by numerous authorities, *see supra* notes 11 and 12, and common experience, the unqualified phrase "for deposit only" is almost universally taken to mean "for deposit only *into the payee's account*." To disregard this common understanding in support of an illogical construction is to elevate form over substance. First American's argument to the contrary is a little like saying that a store sign reading "shirts and shoes required" does not restrict a trouserless man from entering the store.

Finally, it is worth noting that the new revisions to the negotiable instruments provisions of the U.C.C., *see supra* note 10, support the result reached here. Although these revisions are inapplicable to this case, the commentary following § 3A–206 states that the new subdivision dealing with "for deposit only" and like restrictions "continues previous law." § 3A–206 comment 3. Shortly thereafter, the commentary provides an example in which a check bears the words "for deposit only" above the indorsement. In those circumstances, the commentary states, the depositary bank acts inconsistently with the restrictive indorsement where it deposits the check into an account other than that of the payee. *Id.* Although the restriction in that example precedes the signature, whereas the restrictions on the checks at issue here follow the signature, this distinction is immaterial. The clear meaning of the restriction in both circumstances is that the funds should be placed into the payee's account.[17]

■ Therefore, First American violated the restrictive indorsements in depositing into Bassam Salous' account checks made payable to others and restrictively indorsed "for deposit only." Pursuant to the holding in *Qatar I*, then, First American is liable to Qatar for conversion in the amount of the total face values of these checks.

---

**16.** Although the general practice in *statutory* construction is to give the statute its "plain meaning," even Congress' words must be construed so as not to produce absurd or plainly unintended results. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509–10, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989); *Sheridan v. United States*, 487 U.S. 392, 402–03 & n. 7, 108 S.Ct. 2449, 2456 & n. 7, 101 L.Ed.2d 352 (1988).

**17.** The facts of this case are unusual in that it was the forger, Bassam Salous, who added the restriction "for deposit only." While *his* intent clearly was not to direct that the funds be placed into the account of the named payee, the general purpose and meaning of the phrase "for deposit only" is unaltered. *Cf. Society Nat'l Bank v. Security Fed. Sav. & Loan*, 71 Ohio St.3d 321, 643 N.E.2d 1090 (1994). Although it is difficult to speculate regarding why Salous so indorsed the checks, Salous' idiosyncratic subjective intent is immaterial to First American's obligation to abide by the terms of the restrictive indorsement, an obligation which, if fulfilled, would have put an earlier stop to the ongoing fraud.