The appeal is from a jury verdict against Protective Life Insurance Company in favor of the plaintiff, Ruby Inez Atkins, in the amount of $42,605.00. Plaintiff, as administratrix of her husband's estate, sued Protective for breach of contract based on a mortgage protection policy issued by Protective on the deceased husband's life. Under the policy, the balance due on the mortgage would be paid to the mortgagee, First Federal, in the event of the death of the holder of the insurance certificate.
The premiums on the policy for the first year were paid in advance. The deceased husband, Lawrence N. Atkins, who was the holder of the certificate, sold his house while the policy was still in effect. Since the deceased was in the hospital at the time, his son, Ronald, went to First Federal to pay the balance of the money owed on the mortgage. At First Federal, Ronald Atkins talked with Vernon Shaw, a vice-president of First Federal and a licensed Protective agent, who had authority to take credit life insurance applications, to forward *Page 118 
them to Protective, to deliver insurance applications, to deliver insurance certificates, and to collect premiums. Shaw told Ronald that his father could keep his insurance in effect for the remainder of the year, or that he could get a refund for the prepaid unearned premiums. The agent also stated that if the father did not want to keep the policy, he could return it for a refund. The policy was not returned, and Lawrence N. Atkins died about a month later. After Protective denied coverage and returned the unearned premiums, the plaintiff sued to recover under the policy.
The policy provided that the insurance automatically terminated on the date that the mortgage loan was paid in full and that the policy could not be modified except with the consent of Protective's president, vice-president or secretary. Shaw testified that his authority as an agent of Protective was very limited and that he thought his representations concerning the exchange of the mortgage insurance for life insurance were true. Shaw further testified that he had no conversation regarding his authority with Ronald Atkins. Ronald testified that his impression was that Shaw had the authority to bind the insurer.
The jury returned a verdict for the plaintiff and defendant appeals from an adverse judgment.
Appellant raises three issues on appeal: (1) whether Shaw's representations could bind Protective; (2) whether private limitations upon the authority of an agent could bind a third party who contracts with the agent without knowledge of the limitations; and (3) whether the trial court erred in submitting the case to the jury. Put more simply, the issue in this case is whether Protective's agent, Shaw, acted within the scope of his apparent authority in advising Ronald Atkins and whether Atkins was then entitled to rely upon Shaw's representations.
This Court considered basically the same issues in HartfordAccident Indemnity Co. v. Oglesby, 293 Ala. 620,308 So.2d 695 (1975). In Hartford, Oglesby purchased an insurance policy from Hartford which covered both his personal and corporate vehicles under fleet coverage. Subsequently, Oglesby bought his seventeen-year-old son a high performance sports car. Hartford then informed him that this vehicle could not be covered under the fleet policy because of the age of the driver and the high-powered nature of the car. After his son went off to school, Oglesby told Hartford's agent that the son would no longer be driving the car, but in fact, Oglesby himself would be the principal operator of the sports car. The agent then informed Oglesby that he would now cover the car under the fleet policy. The car was involved in an accident and Hartford denied coverage, specifically pointing out the limitations in its agency relationship with the agent with whom Oglesby had dealt.
The court there found that the limitations were not sufficient to preclude liability. The court stated:
 "An agent who is, by certain limitations, less than a general agent may bind his principal as though he were a general agent by apparent authority. While an agent's powers can be limited, and such limitations be binding as between the company and the agent, this could not affect third persons relying upon his apparent authority without notice of his limitations. Continental Casualty Co. v. Holmes, 266 F.2d 269 (5th Cir. 1959); Sun Insurance Office of London v. Mitchell, supra [186 Ala. 420, 65 So. 143]."
Were the representations made by Shaw within his apparent authority as an agent? Shaw, although primarily a vice-president of First Federal, was a licensed agent of Protective. As such, he provided a service to his loan customers and dealt with these customers as an agent of Protective. Protective provided insurance licenses to Shaw and its name appeared upon the front of the licenses. Shaw was designated on the licenses as having the status of "agent" rather than that of "solicitor" or some other designation. Protective, by providing these licenses, was holding Shaw out to be an agent, and Shaw, therefore, was in a relationship with Protective by which he could *Page 119 
cause Protective to be bound by representations that he made within his apparent authority. This Court stated in Barnes v.Atlantic Pacific Life Ins. Co. of America, 295 Ala. 149,325 So.2d 143 (1975), quoting from several cases:
 "`. . . In such case, the defendant will not be permitted to take advantage of the wrongful act, or misconstruction, or mistake, of its own agent, and avoid the policy, the insured being without fault. * * *' Williamson v. New Orleans Insurance Ass'n, 84 Ala. 106, 108, 4 So. 36, 38 (1887). Accord, National Life and Accident Insurance Co. v. Allen, 285 Ala. 551, 234 So.2d 567 (1970); United Security Life Insurance Co. v. St. Clair, 41 Ala. App. 253, 130 So.2d 213 (1961)."
The construction given the policy was within Shaw's apparent authority as an agent and therefore the insurer may be liable for such misconstruction or mistake.
We recognize that this Court, in Security Life and Trust Co.v. Galin, 280 Ala. 325, 193 So.2d 766 (1967), stated:
 "An agent whose authority is limited to soliciting insurance, delivering policies and collecting premiums has no power to change stipulations in a contract of insurance; to do so he must either be a general agent or be specifically authorized or his course of dealing to that extent have been ratified expressly or impliedly. United Ins. Co. of America v. Headrick, 275 Ala. 594, 157 So.2d 19; Liberty National Life Ins. Co. v. Staggs, 242 Ala. 363, 6 So.2d 432."
The record discloses, however, that Vernon Shaw was, in fact, held out as an agent rather than a mere solicitor as is contended by the appellant. As already discussed, Protective procured insurance licenses for Shaw and furnished them to him. Not only did Protective acquire the licenses for Shaw, but its name appeared on these licenses as well, thus designating and holding Shaw out to be its agent and thereby capable of binding Protective by his actions. As stated in Hartford, the fact that there are limitations on an agency relationship and that such limitations are binding between the agent and the company does not affect third persons relying upon the agent's apparent authority without notice of his limitations. In Elmer TallantAgency v. Bailey Wood Products, Inc., 374 So.2d 1312 (Ala. 1979), this Court said:
 "Undisclosed, private limitations upon the authority of a general agent do not bind a third party who, being unaware of them, contracts with an agent within the customary scope of the agent's authority. Mayo v. American Fire and Casualty Company, 282 N.C. 346, 196 S.E.2d 828 (1972)."
Appellant's last contention is that the trial court erred in submitting the case to the jury. In St. Paul Fire Marine Ins.Co. v. Anderson, 358 So.2d 151 (Ala.Civ.App. 1977), the Court of Civil Appeals stated:
 "The general rule is that the existence and scope of an agency relationship is for the jury to determine where the evidence is in conflict. Treadwell Ford, Inc. v. Wallace, 49 Ala. App. 308, 271 So.2d 505 (1973) (emphasis ours)."
In the present case, there was clearly sufficient evidence presented indicating an agency relationship to enable the trial court to submit the case to the jury for its determination.
The jury verdict for the plaintiff in the amount of $42,605 is due to be affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., and EMBRY, J., dissent.
BLOODWORTH, J., not sitting. *Page 120