United States Court of Appeals,
Eleventh Circuit.

Nos. 94-6648, 94-6723.

GENERAL AMERICAN LIFE INSURANCE COMPANY, Plaintiff-Appellant-Cross-Appellee,

v.

AmSOUTH BANK, Defendant-Appellee-Cross-Appellant.

GENERAL AMERICAN LIFE INSURANCE COMPANY, Plaintiff-Appellee,

v.

AmSOUTH BANK, Defendant-Appellant,

Edward Clayton Land, Defendant.

Dec. 4, 1996.

Appeals from the United States District Court for the Southern District of Alabama. (No. CA92-0900-P-5), Virgil Pittman, Judge.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge:

General American Life Insurance Company appeals from a jury verdict finding that it was estopped from asserting its claim that AmSouth Bank improperly paid checks payable to General American. General American's agent indorsed the checks without authority and deposited them in his account at AmSouth. General American argues that as a matter of law, AmSouth did not establish the elements of estoppel. AmSouth cross-appeals from a summary judgment order holding it liable for checks payable to General American that the agent restrictively indorsed and deposited in his account. General American also argues that the district court erred in amending the

---

[*]The Honorable JOHN R. GIBSON, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

summary judgment order to reduce General American's damages. We affirm the summary judgment insofar as it holds AmSouth liable to General American, but reverse its determination of General American's damages. We reverse the judgment on the jury's verdict in favor of AmSouth. Finally, we remand for a new trial to determine General American's damages.

In 1982 General American, by written contract, appointed Land & Associates, Inc. a general agent for the purpose of procuring applications for its life and health insurance and annuities, which Land & Associates was licensed to sell. Edward C. Land was the owner and proprietor of Land & Associates.

Land opened a checking account at the Springdale branch of AmSouth in Mobile, Alabama under the corporate name of Land & Associates. Though this account was a business account, Land opened the account and the signature card for the account bore his personal social security number. Land used the account to pay his agency's expenses, but he also paid personal expenses out of it, such as his child's tuition, his membership in a Mardi Gras society, his power and light bills, and his Visa card bills. When Land opened the account, he provided to AmSouth business cards and stationery from General American showing that Land & Associates was a general agent of General American. Land had no authority to indorse checks and knew this, and also knew that according to the laws of insurance, he could not commingle his money with his clients' money.

Land sold General American insurance and pension investment services to customers. According to General American's procedures,

customers were supposed to write checks payable to General American. General American required Land to send these checks directly to it, and did not authorize Land to indorse these checks under any circumstances.

Land, however, would occasionally indorse and deposit customer checks when they were not for the exact amount owed to General American, and then write a Land & Associates check to General American for the correct amount. Land would make up the difference, although only when the customer's check and his check were for a small amount, typically under $600. General American cashed and processed these Land & Associates checks without objection.

Land also sent Land & Associates checks to General American for customer accounts when customers would inadvertently write checks payable to Land & Associates rather than General American. These Land & Associates checks were also always for small amounts, and General American cashed and processed them without objection. It was impossible for General American to know from processing the Land & Associates checks why Land had written these checks payable to a customer's account.

In March 1987, Land began to misappropriate money. Land purchased a rubber stamp in Mobile which printed "GALIC Qualified Plans Acct: 0551-0900 For Deposit Only." With his rubber stamp, Land indorsed eleven customer checks payable to General American totalling $101,854.39 and deposited them into his Land & Associates account at AmSouth.

Land lost his first rubber stamp after indorsing eleven

checks.  Land purchased another rubber stamp which printed "General American Life Insurance Co. Qualified Plans Acct 0551-0900."  Land used this stamp to indorse twenty-six more customer checks payable to General American totalling $554,462.69 and deposited these checks into his Land & Associates account at AmSouth.

To conceal his misappropriations from General American and his customers, Land changed the addresses for his General American customers to a post office box that he controlled.  Land would intercept the statements General American sent to the customers, which showed that less than all of their money was reaching General American.  He would then falsify new statements and send those to the customers.

Land paid back some of the money to his customers before he was caught.  Without raising suspicion Land purchased from AmSouth teller's checks drawn on AmSouth's account at Chemical Bank of New York City.  In the space marked for the remitter or purchaser of the checks Land put the initials of a customer from whom he had stolen money.  Land made the checks payable to General American and sent them to General American as if they had come from a customer.

Finally, Land's business practices raised suspicions, and in October 1990, just as his agency was about to be investigated, Land confessed to General American that he was taking money.

The employees of AmSouth's Springdale branch never inquired about Land's authority to indorse checks payable to General American and deposit them into his Land & Associates account. AmSouth's employees never asked Land for corporate resolutions from General American authorizing him to indorse and deposit General

American checks into his Land & Associates account. Nor did they ask General American if Land had the authority to indorse its checks. They never inquired about Land's authority because they knew Land & Associates to be General American's general agent, and because Land had been a frequent and trusted customer at the Springdale branch from 1983 to 1990.

General American sued AmSouth for conversion of the thirty-seven checks Land indorsed with his rubber stamps. The district court granted summary judgment in favor of General American on the eleven checks that Land restrictively indorsed "For Deposit Only" with his first rubber stamp. The district court ruled that AmSouth was liable for the checks as a matter of law because the checks were indorsed in the name of General American and "For Deposit Only," and AmSouth did not deposit the checks into a General American account. Based on these eleven checks the district court entered judgment in favor of General American for $114,733.79. After General American and AmSouth filed their notices of appeal, the district court reduced the judgment for General American to $73,825.24.

With respect to the other twenty-six checks payable to General American and deposited into the Land & Associates account, the district court directed a verdict for General American, but submitted to the jury the issue of whether General American was estopped from denying the validity of the indorsements on these checks. The jury returned a verdict for AmSouth. General American appeals from the jury's verdict and the district court's reduction of the judgment in its favor on the eleven checks, while AmSouth

appeals from the district court's grant of summary judgment in favor of General American on the eleven checks.

## I.

General American argues that the jury's verdict in favor of AmSouth on the twenty-six checks must be reversed because Land did not have the authority to indorse checks payable to General American and because AmSouth did not present sufficient evidence to support its estoppel defense.

Alabama law governs this diversity case. Our review of the district court's determination and application of Alabama law is de novo, without deference to the district court. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

Under Alabama law, a depositary bank is liable to the payee of a check for conversion when the bank allows a party who has indorsed the check without authority to deposit the check into his account. *Al Sarena Mines, Inc. v. Southtrust Bank,* 548 So.2d 1356, 1358 (Ala.1989). The depositary bank may avoid liability for the check if it has a valid defense against the payee. *Id.* Consequently, AmSouth can avoid liability to General American for the checks Land indorsed and deposited in his account at AmSouth if: (1) Land's indorsements were authorized; or (2) AmSouth has a valid defense against General American.

## A.

AmSouth argues that under Alabama law a general insurance agent has full power to bind the insurer and stands in the shoes of the insurer for all purposes, and, therefore, Land had the

authority to indorse General American checks. AmSouth cites *Washington National Insurance Co. v. Strickland,* 491 So.2d 872 (Ala.1985), and cases following *Washington National* to support its argument.

We reject AmSouth's interpretation of the law of Alabama. General American's appointment of Land & Associates as its general agent did not automatically give Land the apparent authority to indorse checks payable to General American and deposit them in the Land & Associates account. While it is true that a general agent who lacks the actual authority to bind his principal may have the apparent authority to do so, *see Protective Life Ins. Co. v. Atkins,* 389 So.2d 117, 118-19 (Ala.1980), a general agent's apparent authority is limited by the usual scope and character of the business entrusted to his care, *see Washington Nat'l,* 491 So.2d at 874; *Sanders v. Brown,* 145 Ala. 665, 39 So. 732, 734 (1905). What is within the usual scope and character of the business customarily entrusted to a particular type of general agent is a question of fact. *Protective Life,* 389 So.2d at 119. AmSouth bore the burden of proof on this issue, and thus had to prove apparent authority. *See* Ala.Code § 7-3-307(1)(a) (1993).[1]

AmSouth failed to present evidence that General American gave Land authority or that insurers customarily allow their general

---

[1]Section 7-3-307(1)(b) provides for a presumption that all signatures on a check are authorized. Ala.Code § 7-3-307(1)(b) (1993). This presumption, however, is rebutted as soon as some evidence is introduced that could support a finding that a signature is unauthorized. Ala.Code § 7-3-307 official comment 1 (1993). General American rebutted this presumption of authority when it presented testimony that Land was not authorized to indorse checks payable to General American.

agents to indorse checks payable to the insurer. The only evidence on this issue, presented by General American, was that no insurer allows its general agents to indorse checks made payable to the insurer. We must reject AmSouth's argument that Land had the apparent authority to indorse General American checks because AmSouth did not provide any evidence at trial to support its argument. *See Sanders,* 39 So. at 734 (rejecting an apparent authority argument because of an absence of proof to support it).

*Malmberg v. American Honda Motor Co.,* 644 So.2d 888, 891 (Ala.1994), makes clear that the doctrine of apparent authority is based on the actions of the principal, not those of the agent. Apparent authority is based on the principal holding the agent out to the third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be, or what the agent holds out his authority to be. *Id.* at 891. In *Malmberg,* the evidence of Honda logos on a dealer's signs, literature, products, brochures and plaques, was not sufficient in itself to create an inference of agency. Apparent authority was found only in substantially greater and more detailed evidence of the method in which Honda dealers dealt with warranties, so as to support a customer's reliance on the dealer's statements about the warranty. *Id. Malmberg* recognizes the close relationship between apparent authority and estoppel, an issue with which we will deal.

Time and again AmSouth returns to its assertion that its employees knew that Land & Associates was the general agent for General American, and that this supported the existence of both apparent authority and estoppel. The stationery and the business

card, with General American's name and Land & Associates' identity as general agent, are the high water mark of this evidence. We think this evidence is not unlike the logos, signs, and literature in *Malmberg,* and is inadequate to support AmSouth's argument.

The Alabama cases that AmSouth cites to support its argument do not contradict our analysis. *Washington National* and the cases following it simply hold that a jury may find, when presented with sufficient evidence, that issuing insurance policies is within a general insurance agent's apparent authority. *See, e.g., American States Ins. Co. v. C.F. Halstead Developers, Inc.,* 588 So.2d 870, 872-73 (Ala.1991); *Morris v. Cotton States Life & Health Ins. Co.,* 501 So.2d 1192, 1194 (Ala.1986). *See also Protective Life,* 389 So.2d at 119. None of these cases can be read to support the proposition that a general insurance agent stands in the shoes of an insurance company for *all purposes,* including the indorsement of checks, as AmSouth argues. AmSouth simply reads these cases too broadly.

## B.

General American argues that the district court should have entered judgment as a matter of law for General American because AmSouth failed to present sufficient evidence to support its estoppel defense. General American also argues that the district court's instruction on estoppel was incorrect because the instruction did not include an intent element for estoppel.

We review de novo the district court's decision on whether to grant a party judgment as a matter of law. *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1122 (11th

Cir.1993). We review all of the evidence, and all reasonable inferences which flow from the evidence, in the light most favorable to the party opposing the motion for judgment as a matter of law. *Id.* A party is entitled to judgment as a matter of law only if the evidence and inferences derived from the evidence are so strong that reasonable persons in the exercise of impartial judgment could not arrive at a contrary verdict. *Id.* If, however, the evidence allows reasonable persons to reach different conclusions, judgment as a matter of law is inappropriate. *Id.*

Estoppel is an equitable doctrine that does not create a right or impose an obligation, but prevents an otherwise unjust result. *Williams v. FNBC Acceptance Corp.,* 419 So.2d 1363, 1367 (Ala.1982). The purpose of estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders that assertion contrary to equity and good conscience. *Id.* AmSouth, as the party invoking estoppel, has the burden of proving this defense. *Mobile Towing & Wrecking Co. v. First Nat'l Bank,* 201 Ala. 419, 78 So. 797, 800 (1918).

AmSouth argues that the Alabama Supreme Court has articulated conflicting definitions of equitable estoppel, but recognizes that the district court properly instructed the jury as follows:

> Here is the definition of estoppel: "An estoppel has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence." And the person—and the other person in this case would be the bank—"relies upon that communication. And the other"—that is the bank—"would be harmed materially if the" plaintiff in this case would be "permitted to assert any claim inconsistent with his earlier conduct."

The district court also instructed the jury that with respect to the affirmative defense of estoppel, if the proof failed to establish any essential elements, the jury must find for General American.

We are aware that *Mazer v. Jackson Insurance Agency,* 340 So.2d 770, 773 (Ala.1976), contains definitions of estoppel from two texts, and *General Electric Credit Corp. v. Strickland Division of Rebel Lumber Co.,* 437 So.2d 1240, 1243 (Ala.1983), appears to state the definition in a somewhat different fashion. Nevertheless, *General Electric,* citing *Mazer,* sets out the elements of estoppel articulated in *United States Fidelity & Guaranty Co. v. McKinnon,* 356 So.2d 600, 606 (Ala.1978), which the district court quoted and specifically referred to in its jury instruction. AmSouth argues that the definition of estoppel depends on the facts, and indeed cites a number of Alabama Supreme Court cases that arguably would support this conclusion, and also relate to the question of whether intent is required in estoppel. Many of these issues we need not resolve, as AmSouth specifically states that *McKinnon,* as well as other decisions that were the basis for a portion of the district court's instructions, are statements of the Alabama law on estoppel, and with the exception of intent, General American agrees.

One portion of the first element of estoppel, which the cases say is usually present, *see General Elec.,* 437 So.2d at 1243; *McKinnon,* 356 So.2d at 606; *Mazer,* 340 So.2d at 773, is that a party cannot be estopped unless it has knowledge of the true facts and communicates something misleading to another who relies upon

the communication. As the party invoking estoppel, AmSouth has the burden of proving that General American knew or should have known that Land was indorsing checks payable to General American. *See Tarrant Am. Sav. Bank v. Smokeless Fuel Co.,* 233 Ala. 507, 172 So. 603, 607-08 (1937). AmSouth's estoppel defense begins to founder because it has not demonstrated that General American had knowledge of Land's indorsement and deposit of checks payable to General American, because General American made no communication of any kind to AmSouth, and because it follows that in absence of the communication there could be no reliance by AmSouth.

AmSouth presented no direct evidence that General American knew Land was indorsing its checks. All of General American's employees testified that General American did not allow any general agent to indorse checks payable to General American under any circumstances. All of these witnesses denied knowing about Land's indorsement of General American checks and denied knowing of anyone at General American who was aware of Land's indorsement of General American checks. AmSouth's employees uniformly stated that they never told General American that Land was indorsing checks payable to it and never asked General American if Land could do so. Thus, the testimony of General American's employees was corroborated by the testimony of AmSouth's employees.

To escape this shortfall in its evidence, AmSouth relies on testimony from Land that shows, it argues, that General American knew or should have known that Land was indorsing its checks. We reject AmSouth's argument that a reasonable jury could conclude that General American knew or should have known Land was indorsing

its checks because General American accepted Land & Associates checks which paid money into customer accounts. Land's uncontradicted testimony is that it was impossible for someone other than himself, such as General American, to know why he had sent a Land & Associates check payable to a customer's account. Further, this is especially so when there was an explanation for the Land & Associates checks which did not involve his indorsement of General American checks, that is, that a customer gave Land a check payable to Land & Associates. Indeed, Land's testimony was that he was attempting to conceal, from not only General American but also AmSouth, the nature of his transactions. We conclude no reasonable jury could infer that General American knew or should have known that Land was indorsing its checks because it received and processed Land & Associates checks that paid money into customer accounts.

AmSouth also argues that General American knew or should have known Land was indorsing checks because General American received Chemical Bank teller's checks from Land. The record shows that there was nothing on these checks to indicate to General American that Land purchased them or did anything but collect them from customers and send them to General American. Land testified and the checks show that Land always put a customer's initials in the space on the checks marked for the remitter of the check. Land also testified that he sent these checks to General American with the paperwork which normally accompanied a customer's check. We conclude that no reasonable jury could infer that General American knew or should have known Land was indorsing checks payable to

General American from General American's processing of the Chemical Bank teller's checks.

AmSouth's defense of estoppel fails because AmSouth has failed to provide sufficient evidence to prove the essential elements of its defense. The record is clear that General American, having no knowledge of Land's practice, made no communication to AmSouth, and with no communication, it follows that there was nothing for AmSouth to rely upon. Thus, AmSouth has simply not established the essential elements of estoppel. It also follows that whether or not intent was necessary on the part of General American, the failure to demonstrate knowledge and communication make it evident that there could be no intention that such be acted upon. AmSouth has also failed to show that Land had authority to indorse checks payable to General American. Indeed, there is only evidence to the contrary. Therefore, AmSouth is liable as a matter of law to General American for converting the twenty-six checks Land indorsed and deposited in his account at AmSouth. *See Al Sarena Mines*, 548 So.2d at 1358. We reverse the jury's verdict in favor of AmSouth.

Having concluded that there was no submissible issue as to estoppel, it is unnecessary that we reach the highly contested issue as to whether the instruction given by the district court on estoppel was erroneous for failure to submit the issue of intent.

## II.

AmSouth cross-appeals from the district court's summary judgment order holding AmSouth liable to General American for the eleven restrictively indorsed checks. AmSouth argues that the district court should have allowed AmSouth to raise certain

affirmative defenses against General American's claim that AmSouth converted the eleven checks.  AmSouth asserts that its defenses raise genuine issues of material fact, and, therefore, summary judgment was inappropriate as to these eleven checks.

We review de novo the district court's grant of summary judgment.  *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the party asking for summary judgment is entitled to judgment as a matter of law.  *Id.*  Summary judgment must be granted when a party fails to present evidence establishing an element essential to his case and on which he has the burden of proof.  *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

Under Alabama law, a depositary bank is liable to the payee of a restrictively indorsed check for conversion of that check when the bank does not pay the check according to its restrictive indorsement.  *AmSouth Bank v. Reliable Janitorial Serv., Inc.,* 548 So.2d 1365, 1367-68 (Ala.1989).  The depositary bank, however, may avoid liability for the check if it has a valid defense against the payee.  *See id.* at 1368-69 (permitting a depositary bank to raise the defense of account stated).

We conclude that the district court properly granted General American summary judgment because none of AmSouth's defenses raise a genuine issue of material fact or preclude granting General American judgment as a matter of law.  The defenses that AmSouth argues raise a genuine issue of material fact and preclude summary

judgment with respect to the eleven checks are: (1) that Land had the apparent authority to indorse checks payable to General American because he was General American's general agent; (2) equitable estoppel; and (3) ratification.[2]

As we explained above, AmSouth has failed to present any evidence to support its apparent authority argument on which it has the burden of proof. *See Celotex Corp.,* 477 U.S. at 322-25, 106 S.Ct. at 2552-54. Also, there is no basis in Alabama law for AmSouth's argument that Land had the authority to indorse checks payable to General American simply because he was General American's general agent. Thus, AmSouth's apparent authority defense did not prevent the district court's grant of summary judgment to General American on the eleven checks.

AmSouth's equitable estoppel defense fails because AmSouth presented no evidence to support the essential elements of this defense on which it had the burden of proof. As to whether General American knew or should have known that Land was indorsing its checks, the only evidence was to the contrary. There was no communication by General American and no reliance by AmSouth. The evidence AmSouth relies on to raise a genuine issue as to General American's knowledge is the same evidence it presented at the trial concerning the twenty-six checks. That evidence was not enough to

---

[2]AmSouth in its brief to this court mentions other defenses such as "contributory negligence," "consent," and "respondeat superior." AmSouth completely fails to discuss or explain what genuine issues of material fact these defenses raise, and thus we do not consider them. *Cf. Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir.1990) ("Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court....").

preclude judgment as a matter of law with respect to the twenty-six checks, and it also fails with respect to the eleven restrictively indorsed checks.

AmSouth's ratification defense, on which it had the burden of proof, did not preclude summary judgment because AmSouth did not present any evidence that General American ratified Land's unauthorized indorsements. *Id.*

The payee of a check can expressly ratify an unauthorized indorsement by approving the indorsement, *see Citibanc v. Tricor Energies, Inc.,* 493 So.2d 1344, 1347 (Ala.1986); *Fulka v. Florida Commercial Banks, Inc.,* 371 So.2d 521, 523-24 (Fla.Dist.Ct.App.1979), or by holding the unauthorized indorser solely responsible for the check and forgoing any action against the depositary bank which accepted the check, *see Eutsler v. First Nat'l Bank,* 639 P.2d 1245, 1247-48 (Okla.1982); *Federal Pac. Elec. Co. v. First Pa. Bank,* 266 Pa.Super. 471, 405 A.2d 530, 534 (1979); *Thermo Contracting Corp. v. Bank of New Jersey,* 69 N.J. 352, 354 A.2d 291, 296-97 (1976). The payee of a check impliedly ratifies an unauthorized indorsement when he discovers the unauthorized indorsement and then unreasonably delays in notifying the depositary bank that he intends to hold the bank liable for the check. *See Cook v. Great Western Bank & Trust,* 141 Ariz. 80, 685 P.2d 145, 148-50 (Ct.App.1984).

AmSouth argues it established a genuine issue of material fact as to its ratification defense by proof: (1) that General American waited several years after discovery of the unauthorized indorsements to file suit against AmSouth; and (2) that General

American has held Land responsible for its loss resulting from Land's unauthorized indorsements. The record shows that General American notified AmSouth shortly after it confirmed Land's misappropriations. Additionally, General American's delay in filing suit against AmSouth is irrelevant for ratification, because notification does not equal or require filing suit. As General American did notify AmSouth promptly and its delay in filing suit is irrelevant, this evidence raises no genuine issue of material fact.

General American can hold Land responsible for his unauthorized indorsements without expressly ratifying his indorsements. It is only when the payee looks to the indorser for payment on the check *and* forgoes any action against the depositary bank that the payee expressly ratifies the indorsement. *See Eutsler,* 639 P.2d at 1247-48; *Federal Pac. Elec.,* 405 A.2d at 534. AmSouth has not presented any evidence showing that General American agreed to pursue only Land and, thereby, excused AmSouth from any liability on the checks. That General American has forced Land to pay back some of his illegal gains, by itself, does not raise a genuine issue of material fact as to AmSouth's ratification defense. Thus, AmSouth's ratification defense did not prevent the district court's entry of summary judgment as AmSouth had the burden of proof on this defense and failed to present any relevant evidence to support this defense. *See Celotex Corp.,* 477 U.S. at 322-25, 106 S.Ct. at 2552-54.

The district court properly entered summary judgment against AmSouth on the eleven restrictively indorsed checks as AmSouth was

liable in conversion for those checks as a matter of law.

                                III.

General American argues that the district court improperly amended its June 13, 1994 judgment in favor of General American, because it did not have jurisdiction to amend the judgment after General American and AmSouth had filed their notices of appeal. General American also argues that the June 13, 1994 judgment should be reinstated because the information the district court used to amend its judgment was inaccurate.

Under Federal Rule of Civil Procedure 60(a), the district court may freely amend its judgment to correct errors arising from an oversight or omission before an appeal from that judgment is docketed in the appellate court. The district court amended its judgment on July 14, 1994 to correct an oversight in that judgment. This court docketed the appeal from that judgment on July 21, 1994. Thus, under Rule 60(a) the district court had the power to amend its judgment on July 14, 1994.

General American also argues that the district court relied on inaccurate information in amending its judgment. In its July 14, 1994 amended judgment the district court reduced the damages it awarded to General American for AmSouth's conversion of the eleven restrictively indorsed checks because it failed to take into account two of AmSouth's offsets which should have been credited against General American's recovery. While we express no opinion on the accuracy of the information concerning the offsets, we note that the district court or a jury will have to fully revisit the issue of the amount of AmSouth's offsets in calculating General

American's damages from AmSouth's conversion of the twenty-six checks indorsed without restriction. In order to obtain consistent results, we believe the best course is to reverse the district court's determination of General American's damages from the eleven checks so that General American's damages and AmSouth's offsets for all thirty-seven checks can be determined in one proceeding.

## IV.

In conclusion, we hold that AmSouth is liable as a matter of law to General American for converting all thirty-seven of the checks in this case. We, therefore, REVERSE the jury's verdict in favor of AmSouth and AFFIRM the summary judgment in favor of General American. We also REVERSE the district court's determination of General American's damages resulting from AmSouth's conversion of the eleven restrictively indorsed checks. Finally, we REMAND for a new trial to determine General American's damages resulting from AmSouth's conversion of the thirty-seven checks.