STUART, Justice.
In appeal no. 1140870, Southern Cleaning Service, Inc. (“SCSI”), appeals the summary judgment entered by the Montgomery Circuit Court in favor of Essex Insurance Company (“Essex”) and Gene-see General Agency, Inc. (“Genesee”) (hereinafter referred to collectively as “the insurance defendants”), on SCSI’s claims stemming from Essex’s refusal to provide SCSI coverage under a commercial general-liability policy (“the Essex policy”) based on the alleged failure to timely notify Essex of the facts leading to the claim for coverage.[1] In appeal no. 1140918, the insurance defendants cross-appeal the trial court’s denial of their requests for costs. With regard to appeal no. 1140870, we reverse the summary judgment entered in favor of the insurance defendants and remand the cause for further proceedings. Because the insurance defendants’ claim for costs in appeal no. 1140918 is dependent upon the affirmance of the summary judgment now being reversed, we dismiss that appeal as moot.
I.
In August 2006, Winn-Dixie Montgomery, LLC (“Winn-Dixie”), entered into a contract with SCSI that obligated SCSI to provide floor-care and general janitorial services to multiple Winn-Dixie grocery stores in central Alabama. In February 2009, SCSI entered into a subcontract with Phase II Maintenance Systems, LLC (“Phase II”), whereby Phase II became responsible for providing those services. That subcontract required Phase II to carry a minimum level of liability insurance and to list both SCSI and Winn-Dixie as “additional insureds” on such policies. In accordance with that requirement, Phase II contacted an independent insurance agency in Prattville — The Dennis Group, Inc., doing business as Alabama Auto Insurance Center (“Alabama Auto”) — to procure a policy providing the coverage required by the subcontract. Alabama Auto in turn contacted Genesee, a managing general agency located in Georgia that connected independent agents like Alabama Auto with different insurance companies that provide the type of coverage being sought by the independent agent’s customer. Ultimately, Genesee sent Alabama Auto a quote for a commercial general-liability policy issued by Essex that would meet Phase II’s needs, and Alabama Auto presented that quote to Phase II. Phase II accepted the quote; Alabama Auto transmitted notice of that acceptance to Genesee; and Genesee, which held issuing authority for Essex, then issued Phase *448 II the desired policy on behalf of Essex.[2] Under the terms of the Essex policy, Essex generally obligated itself to pay any sums that the insureds became “legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ ” and to defend the insureds against “any ‘suit’ seeking those damages.”
Phase II also had certain obligations under the policy, however, including the obligation to keep Essex apprised of any facts that might result in a claim upon the Essex policy. Specifically, the Essex policy provided:
“2. Duties in the event of occurrence, offense, claim or suit.
“a. You must see to it that we are notified as soon as practicable of an ‘occurrence’ or an offense which may result in a claim. To the extent possible, notice should include:
“(1) How, when and where the ‘occurrence’ or offense took place;
“(2) The names and addresses of any injured persons and witnesses; and
“(3) The nature and location of any injury or damage arising out of the ‘occurrence’ or offense.
“b. If a claim is made or ‘suit’ is brought against any insured, you must:
“(1) Immediately record the specifics of the claim or ‘suit’ and the date received; and
“(2) Notify us as soon as practicable.
“You must see to it that we receive written notice of the. claim or ‘suit’ as soon as practicable.
“c. You and any other involved insured must:
“(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection -with the claim or ‘suit’;
“(2) Authorize us to obtain records and other information;
“(3) Cooperate with us in the investigation or settlement of the claim or defense against the ‘suit’; and
“(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.”
The Essex policy further provided that no “person or organization” had the right to sue for coverage under the Essex policy “unless all of [its] terms have been fully complied with.” Phase II also paid an additional premium for an endorsement naming SCSI and Winn-Dixie as “additional insureds” covered by the Essex policy; that endorsement provided that “[w]here no coverage shall apply herein for [Phase II], no coverage or defense shall be afforded to the additional insured[s].”
Phase II thereafter began fulfilling its duties under the terms of the subcontract by providing floor-care and general janitorial services to the Winn-Dixie grocery stores listed in the subcontract. On Saturday, March 5, 2011, Beverly Paige was shopping at a Phase II-serviced Winn-Dixie in Montgomery when she allegedly slipped on a wet floor, fell, and was injured. A Phase II employee on duty at the store at the time of the fall reported the incident to Phase II’s owner and president, William Wedgeworth, that same day, and Wedgeworth has given sworn testimony indicating that he separately notified *449 both SCSI and Alabama Auto of the incident on Monday, March 7, 2011, and further specifically asked Alabama Auto to notify Genesee of the incident.
Thereafter, Paige retained counsel and notified Winn-Dixie that she would be pursuing a claim based on her fall. Winn-Dixie accordingly notified Sedgwick Claims Management Services, Inc. (“Sedgwick”), Winn-Dixie’s claims administrator. On April 19, 2011, Sedgwick sent SCSI a letter notifying it of Paige’s claim and requesting acknowledgment that SCSI would “assume the handling of this matter.” SCSI acknowledges receiving that letter from Sedgwick no later than May 2, 2011, and, on May 13, 2011, SCSI sent Phase II a letter informing it of Paige’s claim. That letter further provided:
“[SCSI] is tendering this claim to you and your insurance carrier given your contractual agreement to defend and indemnify [SCSI] and Winn-Dixie for your floor cleaning activities, and given [SCSI’s] and Winn-Dixie’s status as additional insureds under your policy of insurance referenced above.”
SCSI’s letter indicates that a copy of the letter was also being sent to Alabama Auto, and Wedgeworth states that he telephoned Alabama Auto upon receiving SCSI’s letter and that he also sent Alabama Auto a copy of the letter.
Sometime in approximately May 2012, Paige began sending pre-suit settlement demands to Phase II, SCSI, and Winn-Dixie. On May 17, 2012, Alicia McGuffie from SCSI began contacting Alabama Auto trying to get information about Paige’s claim; however, she was repeatedly unable to speak with the Alabama Auto employee assigned to the matter, and her telephone calls were not returned. Finally, on approximately June 9, 2012, an Alabama Auto employee referred McGuffie to Genesee, and, upon telephoning Genesee, McGuffie was told that Genesee had no record of Paige’s claim. Genesee accordingly told McGuffie to contact Essex and, in a conversation with Essex that same day, McGuffie learned that it had no record of Paige’s claim. Thus, on. June 9, 2012, McGuffie initiated a claim with Essex regarding Paige’s fall.
Upon receiving notice of Paige’s claim, Essex sent the claim to an affiliated company, Markel Service, Inc. (“Markel”), for investigation and, on June 11, 2012, Markel provided Genesee with notice of the claim. Thereafter, Markel investigated the circumstances surrounding Paige’s claim. Eventually, Markel asked its outside counsel to evaluate Essex’s coverage responsibilities related to Paige’s claim and counsel ultimately determined that Essex was not obligated to provide a defense or indemnification for Paige’s claim because Essex had not been notified of the claim until approximately 15 months after Paige’s fall, notwithstanding the fact that the Essex policy obligated the insureds to notify it “as soon as practicable” of any occurrence “which may result in a claim.” On August 9, 2012, Markel informed Sedgwick via letter that Essex would not provide a defense or indemnification to Winn-Dixie for Paige’s claim because of the late notice. Markel also stated in that letter that coverage was likewise being denied SCSI and Phase II, which were presumably notified of that denial of coverage at approximately this same time.
On September 25, 2012, Paige sued Phase II, SCSI, and Winn-Dixie, alleging that their negligence and wantonness was responsible for the injuries she sustained in her March 5, 2011, fall. Phase II, SCSI, and Winn-Dixie again asked Essex to provide them, with a defense and indemnity under the terms of the Essex policy; however, their requests were denied. On March 4, 2013, Phase II filed a third-party *450 complaint against Alabama Auto, its owner Bobby Dennis, and the insurance defendants, asserting various claims stemming from Essex’s refusal to provide coverage for Paige’s claim. On June 28, 2013, SCSI and Winn-Dixie asserted similar third-party claims against Alabama Auto, Dennis, and the insurance defendants, as well as cross-claims against Phase II.
Thereafter, Paige, Phase II, SCSI, and Winn-Dixie engaged in mediation and settlement talks, eventually agreeing on $540,700 as a fair settlement amount. When the insurance defendants were invited to approve that settlement or to take over the defense of the case, however, they declined. Paige, Phase II, SCSI, and Winn-Dixie accordingly moved the trial court to enter a partial consent judgment consistent with the agreement they had reached and, on December 3, 2013, the trial court did so, dismissing Paige’s claims against SCSI and Winn-Dixie and entering a $540,700 judgment in favor of Paige and against Phase II, but declaring that that judgment was collectible only if it was ultimately determined that the Essex policy provided Phase II coverage for Paige’s claim.[3] SCSI’s and Winn-Dixie’s cross-claims against Phase II were also dismissed, except to the extent they sought to recoup the costs and attorney fees they had incurred defending Paige’s claim. Phase II consented to a judgment being entered in favor of SCSI and Winn-Dixie on their claims for costs and attorney fees, but the collectibility of that judgment was also made dependent on a determination that the Essex policy provided Phase II coverage for Paige’s claim. All other claims against Alabama Auto, Dennis, and the insurance defendants remained outstanding.
Eventually, the insurance defendants and SCSI and Winn-Dixie separately moved the trial court to enter a summary judgment in their respective favor on the remaining claims. The insurance defendants also moved the trial court to find that SCSI’s and Winn Dixie’s claims were “without substantial justification,” § 12-19-272(a), Ala.Code 1975, and were therefore in violation of the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 (“the ALAA”). On June 11, 2014, the trial court entered a partial summary judgment in favor of the insurance defendants on the claims asserted against them by Phase II, and, on April 8, 2015, the trial court entered another partial summary judgment in favor of the insurance defendants on the claims asserted against them by SCSI and Winn-Dixie. In that April 8 judgment, the trial court also taxed costs in favor of the insurance defendants pursuant to Rule 54(d), Ala. R. Civ. P. The trial court subsequently disposed of the remaining claims in the case when it dismissed Dennis as a defendant and entered a $109,226 default judgment against Alabama Auto and in favor of SCSI and Winn-Dixie.[4]
The insurance defendants thereafter filed a postjudgment statement of taxable costs, requesting an award of $5,261. SCSI opposed that request, and the trial court never ruled on the matter. On May 13, 2015, SCSI appealed the April 8 summary judgment to this Court, arguing that the trial court erred in holding that Essex was not required to provide it coverage under the Essex policy for Paige’s claim (case no. 1140870). On May 27, 2015, the *451 insurance defendants filed their own notice of appeal, arguing that the trial court erred by not granting them a final award of costs pursuant to Rule 54(d) or by awarding them attorney fees pursuant to their request under the ALAA (ease no. 1140918).
II.
In appeal no. 1140870, SCSI seeks the reversal of the summary judgment entered by the trial court in favor of the insurance defendants on the claims SCSI had asserted against them. We review a summary judgment pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
In its April 8, 2015, order entering a summary judgment in favor of the insurance defendants and against SCSI, the trial court did not articulate the rationale behind that judgment; however, it is apparent that the ruling was based upon a determination that Essex had not received timely notice of Paige’s accident and injury. See, e.g., Reeves v. State Farm Fire & Cas. Co., 539 So.2d 252, 254 (Ala.1989) (“[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insureds to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract.”). SCSI argues to this Court that the summary judgment should be reversed for three reasons: 1) Alabama Auto was notified of Paige’s accident within days of its occurrence and, SCSI argues, Alabama Auto had either real or apparent authority to accept notice of claims on behalf of the insurance defendants; 2) the insurance defendants still acknowledge receiving direct notice of Paige’s accident over three months before Paige initiated her action against Phase II, SCSI, and Winn-Dixie; and 3) the insurance defendants were not prejudiced by any delay in receiving notice of Paige’s accident.[5]
SCSI first argues that the notice of Paige’s accident Wedgeworth provided to Alabama Auto in March 2011 should be imputed to the insurance defendants because, SCSI argues, Alabama Auto was acting as an agent of the insurance defendants when it accepted notice of Paige’s *452 accident. The insurance defendants, however, dispute the notion that Alabama Auto ever acted as their agent. In support of their position, they note that Genesee’s contract with Alabama Auto contained the following provisions defining the parameters of Alabama Auto’s relationship with Genesee and the insurers such as Essex whose policies Genesee sold:
“2) [Alabama Auto] is an independent contractor and not an agent or employee of [Genesee] or any insurer represented by' [Genesee], • [Alabama Auto] has no authority to bind risks or coverage changes on behalf of [Genesee] or any insurer represented by [Genesee]; [Alabama Auto] has no authority to issue binders, policies, endorsements or cancellation notices. If [Genesee] gives advanced permission, [Alabama Auto] may issue certificates. of insurance and agrees to hold [Genesee] and insurance carrier harmless to all claims or errors. [Alabama Auto] has no authority to issue certificates of insurance adding additional insureds and special wordings.
[[Image here]]
“14) It is understood that [Alabama Auto] is an agent and/or representative of the insured and not of [Genesee] or any insurance company or' insurers represented by [Genesee].”
(Emphasis added.) Dennis, the owner of Alabama Auto, also acknowledged the substance of this contract in deposition testimony and stated that Alabama Auto forwarded notice of claims for customers only as a courtesy to those customers, not on behalf of the insurers. Thus, the evidence indicating that Alabama Auto was- not an agent in fact for the insurance defendants is undisputed. However, that evidence does not settle the issue whether the insurance defendants nevertheless cloaked Alabama Auto with the apparent authority to accept notice of claims on their behalf. See, e.g., Protective Life Ins. Co. v. Atkins, 389 So.2d 117, 119 (Ala.1980) (explaining that a contract placing limits on an agency relationship “does not affect third persons relying upon the agent’s apparent authority without notice of his limitations”).
As an initial matter, we note that the determination of whether Alabama Auto acted with apparent authority given it by the insurance defendants depends upon the conduct of the insurance defendants and not upon the conduct of Alabama Auto. Gray v. Great American Reserve Ins. Co., 495 So.2d 602, 607 (Ala.1986). See also Malmberg v. American Honda Motor Co., 644 So.2d 888, 891 (Ala.1994) (“The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal’s holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent’s authority might be or what the agent holds out his authority to be.”). SCSI argues that the insurance defendants cloaked Alabama Auto with apparent authority inasmuch as all communication from the insurance defendants was routed through Alabama Auto, the Essex policy identified Alabama Auto as “agent” and listed Alabama Auto’s address while providing no other contact information or directions regarding how to provide notice of a claim, and the insurance defendants accepted and responded to other notices of claims forwarded them by Alabama Auto without ever notifying Phase II, SCSI, or Winn-Dixie that it was inappropriate to provide such notice through Alabama Auto. For the reasons that follow, we agree that the evidence SCSI has identified raises a genuine issue of material fact as to whether Alabama Auto had the apparent authority to accept notice of claims on behalf of the insurance defendants; accordingly, the trial court erred by entering a summary judgment in their favor. See *453 Malmberg, 644 So.2d at 891 (holding that summary judgment in favor of automobile manufacturer was improper where there was a genuine issue of material fact as to whether an automobile dealer had acted as the automobile manufacturer’s agent under the doctrine of appai’ent authority).
In North River Insurance Co. v. Overton, 59 So.3d 1 (Ala.2010), this Court considered an appeal the underlying facts of which were similar to the instant appeal. A business obtained a commercial general-liability policy through an independent insurance agency that in turn used a larger insurance broker to obtain the desired policy from an insurer. That policy listed the independent insurance agency’s name and address on the policy’s declarations page; indeed, that address was the only address listed. Subsequently, there was an occurrence under the terms of the policy, and the insured business provided notice of the occurrence to the independent insurance agency that had sold it the policy. However, the insurer ultimately disclaimed coverage to the insured business, arguing that it was not given the required notice.
The procedural posture of the appeal in North River Insurance diverges from the procedural posture of the instant case at this point, however, as the trial court in North River Insurance entered a summary judgment for the insured, holding that notice given by the insured to the independent insurance agency ivas notice to the insurer because the independent insurance agency was acting as the insurer’s agent:
“ ‘[The insurer] contends that notice to [the independent insurance agency] was not notice to [the insurer] because [the independent insurance agency] failed to pass that notice onto [the insurer]. [The appellees] assert that, regardless of whether the agent communicated such knowledge to the insurer, the agent’s knowledge by law became the insurer’s knowledge. Under Alabama law, notice given to the insurance agent is imputed to the agent’s insurer, and the agent’s knowledge obtained while acting within the scope of its authority is presumed to have been communicated to the insurer. Ala.Code 1975, § 8-2-8; National Security Fire & Cas. Co. v. Coshatt, 690 So.2d 391 (Ala.Civ.App.1996); Alabama Plating Co. v. U.S. Fidelity & Guaranty Co., 690 So.2d 331 (Ala.1996); Union Fire Ins. Co. of Paris France v. Ryals, 25 Ala.App. 300, 145 So. 503 (1932). In the present case, however, there is no question of fact, because the undisputed evidence shows that [the independent insurance agency] was [the insurer’s] agent. Consequently, the notice given to [the independent insurance agency] in August of 2001 was notice to [the insurer]. The fact that [the independent insurance agency] may have failed to pass the notice on to [the insurer] is an issue between [the independent insurance agency] and [the insurer] and not before this court.’ ”
59 So.3d at 6-7 (quoting trial court’s summary-judgment order (emphasis omitted)). The insurer subsequently appealed that summary judgment to this Court, which ultimately found it unnecessary to decide whether the independent insurance agency that sold the insured its policy was an agent of the insurer for purposes of receiving notice of a claim on that policy, holding instead that the appellees had failed to meet their burden of submitting substantial evidence establishing that the independent insurance agency was the agent of the insurer and that summary judgment was accordingly inappropriate. North River Insurance, 59 So.3d at 12. See also Lincoln Log Home Enters., Inc. v. Autrey, 836 So.2d 804, 806 (Ala.2002) (holding that a party asserting the existence of an agency relationship has the burden of produc *454 ing sufficient evidence to prove its existence).
As specifically noted by Justice Woodall and Justice Shaw in their special writings in North River Insurance, however, the issue of apparent authority was not raised in that case. In discussing that fact, Justice Shaw noted that it “appears that, at most, there are possible issues of fact as to whether notice to [the independent insurance agency] constituted notice to [the insurer] under the doctrine of apparent authority; such issues of fact are more properly addressed on remand and preclude an affirmance of the summary judgment.” 59 So.3d at 14-15 (Shaw, J., concurring specially). Justice Woodall agreed with Justice Shaw that the issue of apparent authority should be addressed on remand and further specifically stated that the trial court on remand should consider
“whether, because [the insurer] ‘enjoyed the ease of [issuing a policy] without [revealing its address], under circumstances in which no reasonable [insurer] could consider [notice to it] possible without the intervention of an agent to act on [the insurer’s] behalf, [the insurer] thereby passively permitted [the independent insurance agency] to appear ... to have the authority to act on [its] behalf, and [the independent insurance agency’s] apparent authority is, therefore, implied.’ Tennessee Health Mgmt., Inc. v. Johnson, 49 So.3d 175, 180 (Ala.2010).”
59 So.3d at 15 (Woodall, J., concurring in the result).
Of course, apparent authority has been raised as an issue in this case, both before the trial court and this Court. Reviewing the record, we must conclude that SCSI has submitted substantial evidence that supports its argument that the insurance defendants’ actions vested Alabama Auto with the apparent authority to receive notice of claims. One such item of evidence is the declarations page of the Essex policy listing Alabama Auto as the “agent.” In North River Insurance, this Court noted that the policy at issue in that case did not explicitly identify which party the “agent” represented, but it then concluded that, when viewing the evidence in the light most favorable to the nonmov-ant — as required by our standard of review — the “agent” label affixed to the independent insurance agency could be in reference to its representation of the insured business. 59 So.3d at 12. In this case, the nonmovant is SCSI, and that same standard of review now requires us to view the evidence in the light most favorable to it; accordingly, we note that a fair-minded person could reasonably understand the Essex policy to be referencing Alabama Auto as a dual agent or as the agent of the insurance defendants in some limited respect.
Moreover, as Justice Woodall suggests in his special writing in North River Insurance, the fact that the insurance defendants issued an insurance policy without placing their own contact information on that policy further indicates that Alabama Auto — whose contact information was provided on the policy — had some authority to serve as the proper conduit for communication between the insureds and the insurance defendants, especially in light of Wedgeworth’s sworn testimony indicating that he never had any direct dealings with the insurance defendants; rather, he has stated, all communication including premium payments went through Alabama Auto. We further note that, when questioned about the Essex policy during his deposition, Dennis, the owner of Alabama Auto, agreed that a policyholder might reasonably understand the language used in the Essex policy to mean that it was appropri *455 ate to contact Alabama Auto to make a claim on the Essex policy:
“Q. So you see at the bottom [of the Essex policy’s declarations page] your company name [is] listed as an agent?
“A. Ido.
“Q. And as a layperson, if you were given a document, an insurance policy that had a name of the company and it had the name of an agent with an address and inside it said to contact us or contact we, let us know about a claim, we need to know about a claim, do you think that you would understand that to include the names and address of the people that were provided to you?
[[Image here]]
“A. As a layman, yes.
[[Image here]]
“Q. I want you to find any contact information in there where a person would file a claim or more specifically where Mr. Wedgeworth would file a claim.
“(Whereupon, a break was taken.)
“Q. Did you find any names, addresses or telephone numbers in that policy?
“A. No.
“Q. On the [declarations] page, is there a name, telephone number or address?
“A. Yes.
“Q. Whose is that?
“A. Alabama Auto Insurance Center.
“Q. Is that your company?
“A. It is.
“Q. And that’s the only name, address or telephone number you could find?
“A. That’s the only one I see.”[6]
Finally, we note that the parties disagree as to the significance of the fact that the insurance defendants accepted and responded to notices of claims forwarded them by Alabama Auto on behalf of Phase II in other cases. The insurance defendants do not dispute that they received notice of some claims by way of Alabama Auto, but they emphasize that none of those instances occurred before May 2011, when SCSI copied Alabama Auto on its letter to Phase II discussing Paige’s claim. Accordingly, the insurance defendants argue that SCSI could not have relied on those other instances when it arguably notified Alabama Auto of the Paige claim via the May 2011 letter. However, when viewing this evidence in the light most favorable to SCSI, a fair-minded person might reasonably conclude that the insurance defendants’ acceptance of the notice provided by Alabama Auto in subsequent cases led SCSI to believe that they had also accepted the notice provided by Alabama Auto in previous cases, such as Paige’s. Stated another way, if the insurance defendants had not accepted the notice provided via Alabama Auto in subsequent cases, or had at least told Phase II, SCSI, or Winn-Dixie that notice provided in such manner was improper, that would have apprised those parties that they needed to give notice of claims directly to the insurance defendants in all cases, including Paige’s. They might then have been able to provide direct notice of Paige’s claim more than 15 months before they actually did so, instead of continuing to operate under a belief that Alabama Auto had the authority to accept notice on behalf of the insurance defendants.
In conclusion, we emphasize that the evidence cited by SCSI — that all communi *456 cation .from the insurance defendants was routed through Alabama Auto, that the Essex policy identified Alabama Auto as “agent” and listed Alabama Auto’s address while providing no other contact information or directions regarding how to provide notice of a claim, and that the insurance defendants accepted and responded to other notices of claims forwarded them by Alabama Auto — does not conclusively establish that Alabama Auto had apparent authority to accept notice of claims on behalf of the insurance defendants. Rather, we are holding only that there is substantial evidence indicating that a genuine issue of material fact exists on that point. Accordingly, the summary judgment entered by the trial court in favor of the insurance defendants was improper and is due to be reversed; on remand, the fact-finder will make the ultimate determination of whether the insurance defendants cloaked Alabama Auto with the apparent authority to accept notice of claims on their behalf.[7]
IV.
With regard to appeal no. 1140870, we have concluded that the summary judgment entered in favor of the insurance defendants is due to be reversed on the basis of the first ground argued by SCSI; accordingly, we pretermit all discussion of the other grounds for reversal SCSI has offered. Because the insurance defendants would be entitled to the costs they seek in appeal no. 1140918 only if there is a final judgment in their favor, that appeal is dismissed as moot.
1140870 — REVERSED AND REMANDED.
1140918 — APPEAL DISMISSED.
MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. Winn-Dixie Montgomery, LLC, purports to join SCSI in this appeal; however, Winn-Dixie Montgomery is not listed as an appellant on the notice of appeal filed by SCSI, nor did it file its own notice of appeal. It accordingly is not a party to this appeal. See Edmondson v. Blakey, 341 So.2d 481, 483-84 (Ala.1976) ("Several federal decisions have concluded that [the federal counterpart to Rule 3(c), Ala. R.App. P.], although given its liberal interpretation by the courts, requires that in a multi-party suit, the notice of appeal must, to be effective, include the names of those parties taking the appeal. Van Hoose, et al. v. Eidson, et al., 450 F.2d 746 (6th Cir.1971); Cook & Sons Equipment, Inc. v. Killen, 277 F.2d 607 (9th Cir.1960).”). Van Hoose and Cook & Sons explain that the failure to list a purported appellant is "more than a clerical error” that an appellate court can remedy as a matter of course; rather, it is a fundamental failure of the purported appellant to file an appeal. 450 F.2d at 747, 277 F.2d at 609. See also Ex parte P & H Constr. Co., 723 So.2d 45, 47 (Ala.1998) (''[W]e consider persuasive those federal cases construing Rules 3 and 4 of the Federal Rules of Appellate Procedure, which are very similar to Rules 3 and 4 of the Alabama Rules [of Appellate Procedure].”).

. Phase II thereafter renewed the Essex policy, and it is undisputed that the Essex policy was in effect at all times relevant to this dispute.

. On July 2, 2014, Paige notified the trial court that she had received a settlement from the insurance defendants and that the partial consent judgment had been satisfied.

. The trial court had previously entered a default judgment in favor of Phase II on its claims against Alabama Auto.

. SCSI acknowledges that this Court has held that whether an insurer was prejudiced by a delay in receiving notice of a claim is immaterial, see, e.g., American Fire & Cas. Co. v. Tankersley, 270 Ala. 126, 130, 116 So.2d 579, 582 (1959), but it asks this Court to overrule that line of cases.

. In fact, the Essex policy does provide a Virginia address at which Essex’s president should be served if a lawsuit is initiated against Essex for failure to comply with the policy, but it would appear that service of process is the only intended use of that address.

. Regardless of the conclusion we have reached on SCSI’s apparent-authority argument, the insurance defendants have also argued that the summary judgment entered in their favor and against SCSI should be affirmed based upon the clause in the Essex policy providing that "[wjhere no coverage shall apply herein for [Phase II], no coverage or defense shall be afforded to the additional insured[s].” The insurance defendants argue that the summary judgment entered in their favor on Phase II's claims in June 2014 — 10 months before the summary judgment entered in their favor on SCSI’s claims — conclusively established that they were not obligated to provide benefits for Paige's claim and that, therefore, either on the basis of the cited clause alone, or in conjunction with the law-of-the-case or collateral-estoppel doctrines, SCSI is also barred from receiving any benefits under the Essex policy.
We decline the insurance defendants' invitation to apply the cited clause so as to bar SCSI’s claims. The insuring agreement in the Essex policy broadly provided coverage for “bodily injury” caused by an "occurrence” that takes place in the "coverage territory” during the “policy period.” Paige’s injury resulting from her fall at the Winn-Dixie store during the time the Essex policy was in effect appears to fall within this language as the insurance defendants have identified no relevant exclusion in the policy that would apply. The fact that the Essex policy provided Phase II coverage for Paige’s claim remains true regardless of any action or inaction of Phase II after the occurrence giving rise to that claim. Of course, the Essex policy also imposed certain conditions upon Phase II that it had to fulfill to receive the benefits of coverage, including the duty to give timely notification of any potential claim. However, the failure to comply with that duty does not negate the existence of coverage; rather, it merely precludes the receipt of the benefits of coverage. Thus, Phase II had coverage for Paige’s claim even though it ultimately will not receive the benefits of that coverage, and the cited clause accordingly does not operate to deny SCSI coverage.